SUZANNE LAVANANT et al., Respondents, v GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA, Appellant, and CHUBB GROUP OF INSURANCE COMPANIES et al., Respondents.

GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA, Third-Party Plaintiff-Appellant, v BROWNSTEIN & BROWNSTEIN, Third-Party Defendant-Respondent.

First Department, October 30, 1990

74

APPEARANCES OF COUNSEL

*Irwin Brownstein* of counsel *(Brownstein & Brownstein,* attorneys), for plaintiffs-respondents-appellants.

*Terrence P. O'Reilly* of counsel *(Foley, Hickey, Gilbert & O'Reilly,* attorneys), for appellant and third-party plaintiff-appellant.

*Peter L. Contini* of counsel *(Ronald C. Burke* with him on the brief; *L'Abbate & Balkan,* attorneys), for third-party defendant-respondent.

*John Young* for Chubb Group of Insurance Companies, respondents.

## OPINION OF THE COURT

SULLIVAN, J.

█ This appeal presents the issue of whether a liability insurance policy providing indemnity for damages incurred as a result of "bodily injury"—defined as "bodily injury, sickness or disease"—provides coverage for emotional distress suffered as a result of the insured's negligence but without any physical contact. We hold that it does.

Plaintiffs Lavanant and Brittany Management Corp., the owner and managing agent, respectively, of a brownstone located at 134 East 24th Street in New York City, were, with respect to such premises, insured under two policies, one, a special multiperil policy with defendant General Accident Insurance Company of America providing $500,000 liability coverage each occurrence for bodily injury and property damage and, the other, a commercial umbrella liability policy with defendants Chubb Group of Insurance Companies and Federal Insurance Company (collectively referred to as Federal) providing excess liability coverage of $10,000,000 over General Accident's $500,000 limit per occurrence.

In January 1985, Emilio Belliti and Victor Rizika, tenants occupying the parlor floor at 134 East 24th Street, commenced an action for damages against Lavanant and Brittany, alleging negligence in the demolition and renovation of the building and asserting four causes of action: negligence, intentional infliction of emotional distress, assault and breach of warranty

of habitability. In support of their negligence claim, the plaintiffs alleged that Lavanant and Brittany had the work done in their building "without regard for the safety and comfort of the plaintiffs." General Accident, conceding coverage with respect to the first cause of action and any other claims grounded in negligence but reserving its right as to the intentional tort (second and third) and warranty of habitability (fourth) causes of action and punitive damage claims, undertook the defense of the Belliti action.

Concerned because General Accident's counsel was eager to settle the property aspects of the claim and leave the parties "to do battle over issues which were totally unrelated to [the] liability insurance policy", Lavanant and Brittany moved successfully to have their own counsel, Brownstein & Brownstein, substituted. At about the same time, General Accident, over the objection of Brownstein & Brownstein, settled the property damage portion of the first cause of action for $50,000. The Belliti action thereafter proceeded to trial, during the course of which the intentional tort causes of action were dismissed. The record of that trial reveals that the plaintiffs showed that the conduct complained of made them sick and fearful. There was no proof of a physical injury. In submitting to the jury the first cause of action alleging negligence, the trial court charged that it could consider any emotional distress claimed by the plaintiffs. The jury found in favor of the plaintiffs and awarded them $400,000 on the first cause of action and $5,226.75 as a rent abatement on the fourth cause of action, as well as $2,500,000 in punitive damages, which the trial court set aside. A $410,738.16 judgment entered in the plaintiffs' favor was thereafter affirmed by this court (Belliti v Lavanant, 151 AD2d 1051, lv denied 75 NY2d 702).

In the interim, Lavanant and Brittany commenced this action, seeking, inter alia, a declaration that General Accident is obligated to indemnify them for the amount of the Belliti judgment and the counsel fees and disbursements incurred as a result of the retention of private counsel to defend the action as well as an award in damages for the amount of the judgment and legal expenditures. They sought similar relief against Federal with respect to the judgment only, subject to an allowance for "applicable exclusions". After joinder of issue, Lavanant and Brittany moved for partial summary judgment so declaring. In opposing the motion, General Accident argued that the $400,000 verdict on the first cause of action for emotional distress was tantamount to a finding of

intentional conduct and therefore outside the scope of coverage. It also argued that, whether accidentally or intentionally caused, emotional distress or mental anguish is not, under its policy's definition of that term, a "bodily injury" and thus is not covered.

In granting the motion to the extent of so declaring as against General Accident, the IAS court found that the $400,000 verdict on the first cause of action was based on negligent, not intentional, conduct. It, however, ignored General Accident's argument that a damage award for emotional distress is outside the scope of its coverage inasmuch as emotional distress without physical injury does not meet the policy definition of "bodily injury". The court also granted Federal's cross motion to dismiss the complaint on the ground that its obligation to pay had not been triggered since the net loss for which Lavanant and Brittany were liable fell within General Accident's primary policy limits. Finally, the court granted a motion to dismiss General Accident's third-party complaint against Brownstein & Brownstein on the ground that, absent privity of contract, express or implied, between General Accident and the Brownstein firm, the latter is not liable to third parties for negligence in performing services for its client. General Accident appeals. We affirm.

On appeal, General Accident renews its argument that the $400,000 verdict on the first cause of action was premised on intentional, not negligent, conduct and thus the incident giving rise to the verdict is not covered as an "occurrence", as that term is defined in the policy. It also reasserts the claim that even if the liability of its insureds, Lavanant and Brittany, is based on negligent conduct, in the absence of resulting physical or bodily injury, its policy does not provide coverage for the emotional distress which is the basis of the Belliti plaintiffs' $400,000 verdict.

With respect to General Accident's claim that liability in the underlying action was premised on intentional rather than negligent conduct, it is undisputed that negligence was the only theory of liability submitted to the jury on the first cause of action and that the intentional tort causes of action, the second and third, were dismissed. Thus, the jury's determination that its insureds were negligent is conclusive on that issue.

Having taken the intentional tort aspect of the pleadings out of the case before submitting the matter to the jury, the

Belliti trial court effectively eliminated any argument General Accident might have for avoiding coverage on the ground that liability was premised on intentional conduct. Notwithstanding, General Accident attempts to recast its insureds' liability for the $400,000 damage award on the first cause of action as based on intentional conduct by suggesting that Lavanant and Brittany had to know that their actions in renovating and demolishing the building "would surely drive the tenants from the building." This argument, even if available given the nature of the verdict, is without merit since the General Accident policy, which provides liability coverage for bodily injury "caused by an occurrence", follows well-settled judicial doctrine used in determining whether certain conduct falls within the "accident" language of an insurance policy. " 'In construing whether or not a certain result is accidental, it is customary to look at the [casualty] from the point of view of the insured, to see whether or not, from his point of view, it was unexpected, unusual and unforeseen' ". *(Miller v Continental Ins. Co.,* 40 NY2d 675, 677, quoting treatise.) As Judge Cardozo noted, "Injuries are accidental or the opposite for the purpose of indemnity according to the quality of the results rather than the quality of the causes." *(Messersmith v American Fid. Co.,* 232 NY 161, 165.) General Accident's policy defines an occurrence as "an accident * * * which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." While General Accident's insureds may have intended a constructive eviction of their tenants, the results that ensued, the Belliti plaintiffs' becoming sick and fearful and suffering emotional distress, were not. Thus, the $400,000 award is bottomed on an occurrence.

The more significant question of whether the emotional distress testified to by the Belliti plaintiffs, that is, emotional distress without prior physical contact, is a "bodily injury" as that term is defined in General Accident's policy—"bodily injury, sickness or disease"—appears to present a case of first impression in New York, although the issue has been considered in other jurisdictions. In a factually similar case *(Loewenthal v Security Ins. Co.* (50 Md App 112, 436 A2d 493 [1981]), which involved a policy covering the insured's legal liability for "bodily injury", a term defined, as here, as "bodily injury, sickness or disease", the insured, a contractor, in excavating a basement, damaged an existing foundation wall, forcing the owners to vacate the building and, as a result, to suffer mental

anguish. Even in the absence of physical contact, the court held, the policy definition of "bodily injury" encompassed the claim of pain, suffering and mental anguish.

In *Morrison Assur. Co. v North Am. Reinsurance Corp.* (588 F Supp 1324 [ND Ala 1984], *affd* 760 F2d 279), the mental anguish suffered by a farmer whose land had been damaged as a result of strip mining but who, himself, had not sustained physical trauma was held to fall within a liability policy's "sickness or disease" definition of "bodily injury". In *NPS Corp. v Insurance Co.* (213 NJ Super 547, 517 A2d 1211 [Super Ct App Div 1986]), involving an underlying sexual harassment claim, the court held that the undefined term "bodily injury" in a liability policy covering "all sums the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease" included "the emotional and psychological sequelae allegedly resulting from the unautho- rized invasion of the complainant's person." *(Supra,* 213 NJ Super, at 550, 517 A2d, at 1212.)* It rejected the insurer's argument that bodily injury necessarily entails some physical or corporeal harm caused by external violence, noting that emotional trauma could be as disabling to the body as a visible physical wound and that emotional distress could directly affect bodily functions. *(Supra,* 517 A2d, at 1214.)*

In an analogous New York case *(County of Chemung v Hartford Cas. Ins. Co.,* 130 Misc 2d 648), a liability policy which contained a definition of bodily injury identical to General Accident's was held to cover its insured with respect to allegations that it had carelessly placed in foster care a child who was ultimately sexually abused. The insurer had disclaimed coverage, arguing, as General Accident does here, that the term "bodily injury" excludes injuries manifested by other than physical complaints, such as injuries of a purely mental or emotional nature. The court rejected the argument, noting that "[b]odily injury may well require a physical event, but the court finds no support for the proposition that it requires some sort of physical sequela" *(supra,* at 650).

■ Each of these cases has expanded the scope of "bodily injury" beyond the physical harm that flows directly from trauma to include the emotional and psychological effects of incidents that are otherwise covered by the policy. Given the policy definition of "bodily injury" as including "sickness or disease", words which are to be read and understood, not hypertechnically, but in their plain and ordinary sense *(see, Lewis v Ocean Acc. & Guar. Corp.,* 224 NY 18, 21; *Silverstein v*

*Metropolitan Life Ins. Co.,* 254 NY 81), we believe that to be the correct interpretation. The average layperson reading General Accident's policy would not conclude that mental anguish was excluded from the ambit of "sickness".

Nor is General Accident persuasive in pointing to the broader term "personal injury" in Federal's policy, which is defined as, *inter alia,* "bodily injury, sickness, disease, disability * * * mental anguish and mental injury", in support of its argument that "bodily injury", a far more restrictive term, does not include mental anguish or emotional distress. The meaning of "bodily injury" must be determined from General Accident's own policy language, not Federal's, which, concededly, unambiguously states that it covers mental anguish. "If an exclusion of liability is intended which is not apparent from the language employed, it is the insurer's responsibility to make such intention clearly known." *(Aetna Cas. & Sur. Co. v General Cas. Co.,* 285 App Div 767, 770; *Sperling v Great Am. Indem. Co.,* 7 NY2d 442, 447.)

General Accident, as noted, argues that, in any event, "the term bodily injury requires some physical contact with the injured person's body." It should be noted that in both *Loewenthal* and *Morrison (supra)* there was no evidence of physical contact while in *NPS* and *County of Chemung (supra)* there was. In *County of Chemung,* however, it is clear that the court's expansive interpretation of the term "bodily injury" to include emotional distress did not turn on the existence of prior physical contact as a precipitating cause.

General Accident's policy, however, does not contain a requirement of prior physical contact, although it could have so provided. It is a well-settled tenet of construction that any ambiguity in an insurance policy must be construed against the insurer, the draftsman of the policy. *(United States Fid. & Guar. Co. v Annunziata,* 67 NY2d 229, 232; *Miller v Continental Ins. Co., supra,* 40 NY2d, at 678.) As any layperson reading General Accident's policy would recognize, one may experience "sickness" or "disease" without first experiencing a physical touching. In that regard, we note that the law provides a remedy to one who, at the instance of another in breach of a duty owed, has sustained emotional harm, but without sustaining any physical injury. *(Kennedy v McKesson Co.,* 58 NY2d 500, 504; *Atherton v 21 E. 92nd St. Corp.,* 149 AD2d 354, 356.)

The Belliti plaintiffs alleged, and the jury so found, that

Lavanant and Brittany, General Accident's insureds, were negligent in the way they performed the renovation work and that such negligence caused them to suffer emotional distress. General Accident agreed to cover all sums which its insureds "become legally obligated to pay as damages because of * * * bodily injury * * * caused by an occurrence." It should now indemnify its insureds for the $410,738.16 judgment for which they are liable. *(See, Atlantic Cement Co. v Fidelity & Cas. Co., 63 NY2d 798, 801.)*

■ The IAS court properly dismissed the complaint against Federal since the total of the $50,000 property damage settlement and the $410,738.16 Belliti judgment does not exhaust the $500,000 limit of liability of General Accident's primary coverage. In arguing that Federal should remain in the action due to a potential liability for some of the defense costs incurred in the defense of the Belliti action after the property damage claim was settled, General Accident misreads its own policy. Suffice to say, it is not a "defense within limits" policy. The $500,000 limit expressly applies only to "damages" its insured may be "legally obligated to pay". As we read the policy, only payments in satisfaction of such an obligation can exhaust its policy limits.

■ Finally, we find no error in the dismissal of General Accident's third-party complaint against Brownstein & Brownstein, which is premised upon the claim that the Belliti verdict was due largely to Brownstein's negligence. New York courts impose a strict privity requirement to claims of legal malpractice; an attorney is not liable to a third party for negligence in performing services on behalf of his client. *(Harder v Arthur F. McGinn, Jr., P. C.,* 89 AD2d 732, 733, *affd* 58 NY2d 663; *National Westminster Bank v Weksel,* 124 AD2d 144, 146-147, *lv denied* 70 NY2d 604.)

Nor may General Accident succeed on a theory of implied indemnification since it was not sued nor held liable on a theory of vicarious liability. The causes of action seeking a declaratory judgment with respect to the terms of the insurance policy it issued to Lavanant and Brittany have no relationship to any of the alleged acts or omissions charged to Brownstein. Since the third-party complaint failed to allege that General Accident may be "unfairly required to discharge a duty that should have been discharged by another, such that a contract to indemnify should be implied by law" *(Board of Educ. v Sargent, Webster, Crenshaw & Folley,* 71 NY2d 21, 29), a claim for implied indemnity does not lie.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Beverly S. Cohen, J.), entered November 30, 1989, which, *inter alia,* granted plaintiff's motion for partial summary judgment to the extent indicated, should be affirmed, with costs and disbursements.

MURPHY, P. J., CARRO and MILONAS, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered November 30, 1989, unanimously affirmed, with costs.