**SMITHWAY MOTOR XPRESS, INC., Appellant,**

v.

**LIBERTY MUTUAL INSURANCE CO., Appellee.**

No. 91–285.

Supreme Court of Iowa.

April 15, 1992.

Blake Parker of Parker & Fors, Fort Dodge, for appellant.

Patrick J. McNulty of Grefe & Sidney, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and SCHULTZ, CARTER, LAVORATO, and ANDREASEN, JJ.

SCHULTZ, Justice.

In this appeal, the issue is whether a general liability policy covers a claim by an insured's former employee seeking damages for retaliatory discharge. The district court granted a summary judgment in favor of the insurer. We affirm.

Smithway Motor Xpress, Inc., (Smithway) purchased a comprehensive liability policy from Liberty Mutual Insurance Co. (Liberty). The policy was in effect on January 5, 1988, when a former employee of Smithway filed a suit against Smithway seeking damages as a result of an alleged wrongful discharge.

Smithway commenced this declaratory judgment action requesting the court to

determine that Liberty was obligated to defend the former employee's lawsuit. Smithway relied on the theory that the insurance policy covered the former employee's claim that he was discharged in retaliation for his application and receipt of worker's compensation benefits. Liberty denied that its policy covered such a claim. Liberty moved for summary judgment, contending the loss did not fall within the policy's coverage of losses for damages arising from "bodily injury" or "property damage" caused by an "occurrence."

The district court granted Liberty's motion for summary judgment and dismissed the case. On appeal, Smithway asserts the former employee's wrongful discharge claim was (1) an occurrence resulting in property damage or bodily injury as defined under the policy; and (2) covered by the policy's incidental contract endorsement. Smithway further claims the doctrine of reasonable expectations should require coverage of the wrongful discharge claim under the policy.

I. *Standard of review.* Summary judgment is only proper when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). The party opposing the summary judgment motion may not rest upon the pleadings but must set forth specific facts showing that there is a genuine issue of fact. Iowa R.Civ.P. 237(e). Consequently, our task on appeal is to determine whether a genuine issue of fact exists and if the law was applied correctly. *Hernandez v. Farmers Ins. Co.*, 460 N.W.2d 842, 843 (Iowa 1990).

◼ Under the record, the known facts are limited to the insurance policy and the employee's petition. No further facts were supplied by affidavit or otherwise. Thus, the facts are undisputed. If neither party offers extrinsic evidence concerning the meaning of the policy language, the meaning of the language used in the relevant policy is a matter for the court to decide as a question of law. *Cairns v. Grinnell Mut. Reinsurance Co.*, 398 N.W.2d 821, 823–24 (Iowa 1987) (citations omitted).

II. *Duty to defend.* Liberty's policy agreed "to defend any suit against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent...." Under similar policy language we have indicated "[a]n insurer has a duty to defend whenever there is potential or possible liability to indemnify the insured based on the facts appearing at the outset of the case." *First Newton Nat'l Bank v. General Casualty Co.*, 426 N.W.2d 618, 623 (Iowa 1988) (citing *McAndrews v. Farm Bureau Mut. Ins. Co.*, 349 N.W.2d 117, 119 (Iowa 1984)). In this case, we must decide whether a suit for wrongful discharge generates an issue of potential or possible liability under the terms of the policy.

III. *Policy coverage.* The policy provides comprehensive liability coverage. Pertinent portions provide:

> The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of
>
> Coverage A. *bodily injury* or
> Coverage B. *property damage*
> to which this policy applies, caused by an *occurrence....*

The parties disagree on whether the employee's discharge was an "occurrence" and whether the employee's damages were "property damage" under the policy. Thus, we must determine the meaning of these terms as applied to the employee's lawsuit.

◼ Certain principles aid us here. The cardinal principle is that "the intent of the parties must control; and except in cases of ambiguity, this is determined by what the contract itself says." Iowa R.App.P. 14(f)(14). The test for ambiguity in an insurance policy is whether a reasonable person would read more than one meaning into the words. *Vance v. Pekin Ins. Co.*, 457 N.W.2d 589, 593 (Iowa 1990).

◼ A. *Occurrence.* The parties' dispute centers on whether the employee's suit alleges an "occurrence" as defined in the policy. The policy defines the term *"occurrence"* as "an accident, including

continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured....*" The plain terms of the policy language require that injury or damage be neither expected nor intended.

Smithway urges the claim of retaliatory discharge is a tort and is the type of conduct that falls within the accident language of the policy. It cites *Lavanant v. General Accident Ins. Co.*, 164 A.D.2d 73, 561 N.Y.S.2d 164 (1990), as authority for this proposition. In *Lavanant*, the court reasoned that a landlord's conduct in demolishing and restoring a building, which caused the tenants to suffer emotional distress, was a negligent rather than an intentional act. *Id.* at 77–78, 561 N.Y.S.2d at 167. Thus, the court concluded that the landlord's conduct fell within the policy definition of an "occurrence" based on its conclusion that the resulting emotional distress was not expected. *Id.* Here, the employee seeks recovery for retaliatory discharge which is a remedy allowed on public policy grounds. Not only the act of firing, but also the resulting loss of income are expected and intended. Thus, we believe that *Lavanant* does not support Smithway's position.

Our review of cases involving an insured's claim for liability coverage for an employee's wrongful discharge suit reveals that an employee's discharge is not an "occurrence" under policies that contain definitions similar or identical to the definition provided in the policy in this case. *Loyola Marymount Univ. v. Hartford Accident & Indem. Co.*, 219 Cal.App.3d 1217, 1224, 271 Cal.Rptr. 528, 532 (1990); *Commercial Union Ins. Co. v. Superior Court*, 196 Cal. App.3d 1205, 1209, 242 Cal.Rptr. 454, 456 (1987); *Daly Ditches Irrigation Dist. v. National Sur. Corp.*, 234 Mont. 537, 764 P.2d 1276, 1277–78 (1988); *Jespersen v. United States Fidelity & Guar. Co.*, 551 A.2d 530, 532 (N.H.1988); *Mary & Alice Ford Nursing Home Co. v. Fireman's Ins. Co.*, 86 A.D.2d 736, 737–38, 446 N.Y.S.2d 599, 601 (1982); *Falkenstein's Meat Co. v. Maryland Casualty Co.*, 91 Or.App. 276, 754 P.2d 621, 623–24 (1988). In construing

a similar definition of the term "occurrence," the California court of appeals stated, "An intentional termination is not an 'occurrence' under the policy because it is not an accident. The definition of 'accident' halts any argument that [the employer] intended [the] act but not the resulting harm." *Commercial Union Ins. Co.*, 196 Cal.App.3d at 1209, 242 Cal.Rptr. at 456. In construing an identical definition of the term "occurrence," the New York court stated:

> If, in fact, plaintiff discharged Kathleen Wood from her employment because of her disability, it cannot be said that the mental and emotional injuries alleged by the Woods as flowing directly from plaintiff's intentional discriminatory practice were unexpected and unforeseen by plaintiff, the insured. While "it is not legally impossible to find accidental results flowing from intentional causes, i.e., that the resulting damage was unintended although the original act or acts leading to the damage were intentional" such is not the case here, for the damages alleged in the Woods' complaint are the intended result which flows directly and immediately from plaintiff's intentional act, rather than arising out of a chain of unintended though foreseeable events that occurred after the intentional act....

*Mary & Alice Ford Nursing Home*, 86 A.D.2d at 737, 446 N.Y.S.2d at 601 (citations omitted).

We agree with the reasoning in the cases cited. We conclude that intentional discharge of an employee is not an accident and any resulting damages claimed are intended and expected. Thus, we hold that a wrongful discharge claim is not an "occurrence" covered by the insurance policy.

B. *Damage.* Smithway also advanced arguments that the damages sought by the employee is the type of damage covered under the bodily injury and property damage provisions of the policy. We read the employee's petition as seeking damages for loss of wages and fringe benefits rather than for bodily inju-

ry. Thus, we must determine whether the employee's requested damages fall within the policy definition of "property damages."

The policy defines the term *"property damage"* as "physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom...." The loss suffered by a discharged employee in a retaliatory discharge case cannot arise out of physical injury or destruction of tangible property. *See Southeastern Color Lithographers, Inc. v. Graphic Arts Mut. Ins. Co.,* 296 S.E.2d 378, 380 (Ga.App.1982). We conclude that losses arising out of a wrongful discharge claim are not property damages as defined and covered by a comprehensive liability policy. *See id.*

■ C. *Coverage for incidental contract.* In this case, the policy excluded coverage for liability "assumed by the insured under any contract or agreement except an incidental contract...." An endorsement to the policy affords coverage "with respect to *liability assumed* under an incidental contract...." (emphasis added). The endorsement states, "The definition of incidental contract is extended to include any contract or agreement relating to the conduct of the named insured's business." Smithway asserts that the policy covers any liability stemming from the employee's employment contract by arguing that it is an incidental contract that does not fall within any of the exclusions specified in the endorsement.

We believe that an employment contract is not an incidental contract under the endorsement. The plain language of the endorsement speaks to "liability assumed under an incidental contract." Liability assumed by an insured under an incidental contract refers to the assumption of another's liability, such as an agreement to indemnify or hold another harmless. *Musgrove v. Southland Corp.,* 898 F.2d 1041, 1044 (5th Cir.1990); *Dreis & Krump Mfg. Co. v. Phoenix Ins. Co.,* 548 F.2d 681, 684 (7th Cir.1977); *Commercial Union Ins. Co. v. Basic Am. Medical, Inc.,* 703 F.Supp. 629, 633 (E.D.Mich.1989); *Olympic, Inc. v. Providence Washington Ins. Co.,* 648 P.2d 1008, 1010–11 (Alaska 1982); *Office Structures, Inc. v. Home Ins. Co.,* 503 A.2d 193, 197 (Del.1985); *Haugan v. Home Indem. Co.,* 197 N.W.2d 18, 23 (S.D. 1972), *accord West v. Jacobs,* 790 S.W.2d 475, 478–49 (Mo.App.1990). The South Dakota court states:

> The coverage under this section of the policies applies only to an assumption of another's liability. This contemplates an express contractual assumption of another's potential liability by an agreement to indemnify or hold another harmless for an obligation not otherwise imposed by law ...

*Haugan,* 197 N.W.2d at 23.

■ We believe there is a distinction between incurring liability through breach of an employment contract and incurring liability by entering a contract to assume liability of another. An action against an insured by an employee for wrongful discharge is not a contractual assumption of another's liability; therefore, it does not constitute an incidental contract covered under the policy.

III. *Reasonable expectations.* Smithway urges that the doctrine of reasonable expectations is applicable to this case. Liberty claims that Smithway never submitted any evidence of reasonable expectations and cannot urge that a fact issue has been generated on this issue.

This court has articulated the doctrine of reasonable expectations as follows:

> The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.

*Rodman v. State Farm Mut. Auto. Ins. Co.,* 208 N.W.2d 903, 906 (Iowa 1973). Later we stated that "[r]easonable expectations giving rise to application of the doctrine may be established by proof of the underlying negotiations or inferred from the circumstances." *Farm Bureau Mut. Ins. Co. v. Sandbulte,* 302 N.W.2d 104, 112

(Iowa 1981). Under the record of this proceeding, Smithway has never submitted any evidence on the underlying negotiations or any circumstances in support of its reasonable expectations of coverage.

We may also examine the policy provisions to determine whether Smithway as a reasonable person would understand that the loss was not covered under the policy. *See C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 177 (Iowa 1975). As we determined previously, the policy terms are not ambiguous. We find nothing in the policy that would mislead an insured. Thus, we conclude that the policy language is clear and a reasonable person would understand that an employee's claim for wrongful discharge was not covered under the policy. We hold the doctrine of reasonable expectations is not available to Smithway.

IV. *Summary.* We hold that the wrongful discharge claim by the employee against Smithway does not fall within the coverage of Liberty's comprehensive liability policy. We also hold that the doctrine of reasonable expectations is not available to Smithway. The district court properly granted summary judgment dismissing this action.

AFFIRMED.