**STATE AND COUNTY MUTUAL FIRE INSURANCE COMPANY,**
Plaintiff,

v.

**William Prentice YOUNG, Defendant.**

**Civil Action No. 3:04–CV–123.**

United States District Court,
N.D. West Virginia,
Martinsburg.

May 31, 2007.

Kerrie Wagoner Boyle, P. Gregory Haddad, MacCorkle, Lavender, Casey & Sweeney, PLLC, Morgantown, WV, for Plaintiff.

Christina S. Terek, Flaherty, Sensabaugh & Bonasso, PLLC, Wheeling, WV, Erica M. Baumgras, Jeffrey M. Wakefield, Flaherty, Sensabaugh & Bonasso, PLLC, Charleston, WV, Ralph C. Young, Hamilton Burgess Young & Pollard, PLLC, Fayetteville, WV, for Defendant.

### MEMORANDUM ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

BAILEY, District Judge.

Pending before this Court is a Motion for Judgment on the Pleadings filed by defendant William Prentice Young (Doc. 58), in which the defendant asserts that the plaintiff lacks standing to assert a claim for legal malpractice against the defendant due to the absence of an attorney-client relationship between the insurer and the attorney which it retains to represent the interests of the insureds.

### I. Statement of Facts and Procedural History

This legal malpractice action arises out of a civil action in this Court styled *Miller v. Pruneda*, 3:02–CV–42, emanating from an automobile accident occurring on July 6, 2000. State and County Mutual Fire Insurance Company (hereinafter "State & County") contacted William Prentice Young ("Young") to defend the interests of Eric Pruneda and Carlos DeLuna dba A.B. Farms (hereinafter "the insureds"). State & County and Young subsequently executed an employment agreement, including a retainer and hourly pay rate for Young's representation of the insureds in the underlying automobile accident. Although Young was never in contact with his clients [1], he proceeded to defend the insureds pursuant to his employment contract with State & County. During the course of litigation, Young admittedly failed to respond to discovery and dispositive motions. State & County subsequently settled the automobile accident suit on May 9, 2003. The insurer alleges in this action that defendant Young's sub-par representation of the insureds forced it to settle the underlying claims for amounts in

1. It appears from the record that, for whatever reason, defendant Young was never in contact with the insureds throughout the course of the underlying automobile accident litigation.

excess of their true value. It was from defendant Young's alleged neglect that the current litigation ensued.

## II. Applicable Law

Because this Court is a federal court sitting in diversity, it must apply West Virginia substantive law to determine whether the plaintiff has standing in this case. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Where state law is unclear on an issue, this Court must interpret the law as it appears that the West Virginia Supreme Court of Appeals would. *See Wells v. Liddy,* 186 F.3d 505, 528 (4th Cir.1999). Here, the Supreme Court of Appeals has not ruled on the particular issue before the Court.

■ Under West Virginia law, "[i]n a suit against an attorney for negligence, the plaintiff must prove three things in order to recover: (1) [t]he attorney's employment; (2) his/her neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff." Syllabus Pt. 1, *Calvert v. Scharf,* 217 W.Va. 684, 619 S.E.2d 197 (2005). *See also Sheetz, Inc. v. Bowles Rice McDavid Graff & Love, PLLC,* 209 W.Va. 318, 333 n. 13, 547 S.E.2d 256, 271 n. 13 (2001) (same); *Armor v. Lantz,* 207 W.Va. 672, 681, 535 S.E.2d 737, 746 (2000) (same); *McGuire v. Fitzsimmons,* 197 W.Va. 132, 136–37, 475 S.E.2d 132, 136–37 (1996) (same); *Keister v. Talbott,* 182 W.Va. 745, 748–49, 391 S.E.2d 895, 898–99 (1990).

## III. Discussion

### A. The Attorney's Employment

■ The West Virginia Supreme Court of Appeals has held that "[w]here a malpractice claim involves a matter for which the plaintiff directly hired the attorney, there is no question that a duty was owed." *Calvert v. Scharf,* 217 W.Va. 684, 690, 619 S.E.2d 197, 203 (2005). Furthermore, the

Court explained that a separate duty is only required "where there is *no* employment relationship between the lawyer and the malpractice plaintiffs." *Id.* (emphasis added). In this case, State & County hired defendant Young to represent its insureds. Defendant Young further admits that an employment relationship existed. Accordingly, because the insurance company hired defendant Young to serve as defense counsel for the insured, it need not show additional evidence of a duty.

Absent the employment relationship between the State & County and defendant Young, such a duty still exists. Regardless of the status of the defendant attorney's employment, the West Virginia Supreme Court of Appeals, as well as the Restatement, have both established that a lawyer, nevertheless, owes a duty of care in certain situations. For instance, in the *Restatement (Third) of the Law Governing Lawyers,* § 51(3), "[a] lawyer owes a duty to use care to a *non-client* when and to the extent that:

> (a) the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient;
>
> (b) such a duty would not significantly impair the lawyer's performance of obligations to the client; and
>
> (c) the absence of such a duty would make enforcement of those obligations to the client unlikely."

*Restatement (Third) of the Law Governing Lawyers,* § 51(3).

Comment g to § 51 addresses the issue squarely:

> *g. A liability insurer's claim for professional negligence.* Under Subsection (3), a lawyer designated by an insurer to defend an insured owes a duty of care to the insurer with respect to matters as to which the interests of the insurer and insured are not in conflict, whether or not the insurer is held to be a co-client

of the lawyer (see § 134, Comment *f*). For example, if the lawyer negligently fails to oppose a motion for summary judgment against the insured and the insurer must pay the resulting adverse judgment, the insurer has a claim against the lawyer for any proximately caused loss. In such circumstances, the insured and insurer, under the insurance contract, both have a reasonable expectation that the lawyer's services will benefit both insured and insurer. Recognizing that the lawyer owes a duty to the insurer promotes enforcement of the lawyer's obligations to the insured. However, such a duty does not arise when it would significantly impair, in the circumstances of the representation, the lawyer's performance of obligations to the insured. For example, if the lawyer recommends acceptance of a settlement offer just below the policy limits and the insurer accepts the offer, the insurer may not later seek to recover from the lawyer on a claim that a competent lawyer in the circumstances would have advised that the offer be rejected. Allowing recovery in such circumstances would give the lawyer an interest in recommending rejection of a settlement offer beneficial to the insured in order to escape possible liability to the insurer.

*Restatement (Third) of the Law Governing Lawyers*, § 51 cmt. g.

The Supreme Court of Appeals, following the rationale in the *Restatement*, has held that a will beneficiary has standing to assert a malpractice claim alleging negligence on the part of the lawyer who drafted it. *Calvert v. Scharf, supra.* In so holding, the Court addressed that issue as one of first impression, and followed the majority of jurisdictions, in which "the prevailing rule is that an attorney can be liable for negligence to the intended beneficiary...." *Calvert*, 217 W.Va. at 690, 619 S.E.2d at 203. Most importantly, the Court recognized the modern trend, which allows non-clients to bring a legal malpractice cause of action. *Id.*, 217 W.Va. at 691, 619 S.E.2d at 204. Because the Supreme Court of Appeals had not previously ruled on the issue, it looked to other jurisdictions for guidance. Today, this Court will draw from both the keen insight of the West Virginia Supreme Court of Appeals as well as jurisdictions that have expressly ruled on the issue at hand.

Much can be drawn from the Court's previous rulings on the existence of such a duty. In *Aikens v. Debow*, 208 W.Va. 486, 500–01, 541 S.E.2d 576, 590–91 (2000), the Court recognized that the existence of a "special relationship" may give rise to liability.[2] *See Calvert, supra*, 217 W.Va. at 691, 619 S.E.2d at 204. In its reasoning, the Court explained the practical reasons for allowing such lawsuits. For example, in the attorney/non-client will beneficiary relationship the Court adopted a realistic approach, recognizing that "[n]o one [other than the beneficiaries] has a sufficient interest, can show damage, or possesses the [volition], to do so," *Calvert*, 217 at 692, 619 S.E.2d at 205. Further, in addressing whether the non-client beneficiary had

---

2. In *Aikens*, the Court listed a number of circumstances in which it had held that an action could be maintained against a professional not in privity with the plaintiff: "auditors have been held liable to plaintiffs who bought stock in reliance upon a financial statement negligently prepared for a corporation; surveyors and termite inspectors liable to remote purchasers of property; engineers and architects liable to contractors who relied upon plans negligently prepared for property owners who later hired the contractors; attorneys and notaries public liable to beneficiaries of negligently prepare[d] wills; real estate brokers for failure to disclose defects; and telegraph companies liable to individuals who failed to secure a contract due to the negligent transmission of a message." 208 W.Va. at 500, 541 S.E.2d at 591.

standing to assert the negligence claim against the attorney-will drafter, the Court determined that the real parties who suffered the loss were the will beneficiaries. *Id.* Following this logic, it would appear that the Supreme Court of Appeals would likewise find that the insurance company bears the loss of its insureds. It follows that, just as will beneficiaries possess standing, so too should insurance companies.

The Court further recognized that the benefit, which the plaintiff beneficiary would have received had the will been properly executed, is so closely connected to the benefit the defendant drafter promised to the testatrix that the beneficiary should be able to enforce the contract. *Calvert,* 217 W.Va. at 692, 619 S.E.2d at 205 (*citing Stowe v. Smith,* 184 Conn. 194, 197–98, 441 A.2d 81, 83 (1981)). A similar conclusion can be reached in the insurer/insured/attorney triparte relationship. In following such logic, it only seems reasonable that an insurance company may enforce the contract of the insured as the true party bearing the loss.

Furthermore, the element of foreseeability is clearly satisfied in the context of the harm caused to an insurer by the attorney who negligently represents the insured.

The same issue was presented in *Gen. Sec. Ins. Co. v. Jordan, Coyne & Savits,* *LLP,* 357 F.Supp.2d 951, 957 (E.D.Va. 2005), in which the District Court held that an insurer may maintain a malpractice action against a lawyer that it has retained to defend the interests of its insured, even though under Virginia law (as in West Virginia) the insured is the client and not the insurance company. In its decision, the District Court noted that the Supreme Court of Virginia had not addressed the issue. The Court then noted that:

> the courts of other jurisdictions generally recognize such a cause of action, they differ markedly on the theory of liability under which such a claim may be brought. In most jurisdictions, the retaining insurer may sue the law firm directly as its client. Although most of the reported cases involving such suits offer no analysis of the insurer's relationship with the law firm,[3] the few that do reflect the view that a "tripartite relationship" exists among insurer, insured, and counsel, with both insurer and insured as co-clients of the firm in the absence of a conflict of interest.[4] *See* Ronald E. Mallen & Jeffrey M. Smith, 4 Legal Malpractice §§ 29.3, 29.16 (5th ed.2000). Some courts and the Restatement recognize an additional or substitute cause of action by the insurer as a non-client beneficiary of the firm's legal services.[5] Both theories of

**3.** In its decision, the Court cited in a footnote "*See, e.g., Fremont Indem. Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A.,* 271 F.3d 1272 (11th Cir.2001) (Florida law); *Reliance Nat'l Indem. Co. v. Jennings,* 189 F.3d 689 (8th Cir.1999) (Arkansas law); *Am. Int'l Adjustment Co. v. Galvin,* 86 F.3d 1455 (7th Cir.1996) (Indiana law); *Northwestern Nat'l Ins. Co. v. Osborne,* 573 F.Supp. 1045 (E.D.Ky.1983) (Kentucky law); *Smiley v. Manchester Ins. & Indem. Co.,* 71 Ill.2d 306, 16 Ill.Dec. 487, 375 N.E.2d 118 (1978)."

**4.** Here, the Court cited in a footnote "*See, e.g., Home Indem. Co. v. Lane Powell Moss & Miller,* 43 F.3d 1322, 1330–31 (9th Cir.1995)

(upholding finding of attorney-client relationship between plaintiff insurer and defendant law firm retained to represent insured); *Spratley v. State Farm Mut. Auto. Ins. Co.,* 78 P.3d 603, 607 (Utah 2003); *Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone,* 79 Cal.App.4th 114, 93 Cal.Rptr.2d 534, 542–547 (2000); *see also Pine Island Farmers Coop v. Erstad & Riemer, P.A.,* 649 N.W.2d 444, 452 (Minn.2002) (stating that both insurer and insured can be clients of retained firm if no conflict of interest exists and the insured consents after consultation)."

**5.** Here the Court cited "*See, e.g., Paradigm Ins. Co. v. Langerman Law Offices,* 200 Ariz.

liability, of course, depend on the existence of a duty of care running from the firm to the retaining insurer, and acknowledge that such a duty disappears when a conflict of interest threatens the firm's ability to represent the insured.[6] Some jurisdictions go one step further, however, and reject outright the idea of a duty owed by the firm the insurer, contending that such a duty would compromise the law firm's loyalty to the insured.[7] Although these rejecting jurisdictions thus preclude any direct legal malpractice liability from the firm to the insurer, they nevertheless permit the insurer to be subrogated to the insured and thus to sue the firm standing in the insured's shoes.[8] Accordingly, despite sharp doctrinal differences regarding the relationship between the insurer and the firm it retains, nearly all jurisdictions in the United States permit some form of legal malpractice action by an insurer against the firm it retains to defend an insured.

357 F.Supp.2d 951, 956–57.

The District Court continued:

The public policy reasons for permitting such an action are obvious, and have been invoked by courts recognizing these aforementioned liability theories. Among other things, permitting an insurer to bring an action against the attorney it retains can "promote[ ] enforcement of [the attorney's] obligations to the Insured," *Restatement (Third) of the Law Governing Lawyers* § 51 cmt. g (2000), because "both insurer and insured often share a common interest in developing and presenting a strong defense to a claim that they believe to be unfounded as to liability, damages, or both." *Paradigm*, 24 P.3d at 598. Because the insurer, rather than the insured, is typically required to satisfy a judgment resulting from the firm's negligence, the insured rarely has any incentive to bring a claim for malpractice against the retained attorney. See *Bell*, 475 N.W.2d at 297. The failure to permit a cause of action by the insurer, therefore, serves the interests of no one except the attorney who committed the malpractice. See *id.* at 298. Permitting the insurer to sue the attorney, moreover, comports more readily with the understanding among both attorneys and insurers that "the lawyer's services are ordinarily intended to benefit both the insurer and the insured when their interests coincide." *Paradigm*, 24 P.3d at 602.

Accordingly, despite the fact that "the tripartite relationship between insured, insurer, and defense counsel contains rife possibility of conflict," see *Bell*, 475 N.W.2d at 297, nearly all courts have concluded that the harms-benefits calculus weighs in favor of recognizing an insurer's legal malpractice claim against

---

146, 24 P.3d 593, 602 (2001) (holding insurer a non-client beneficiary of firm's legal services); *Restatement (Third) of the Law Governing Lawyers* § 51 cmt. g (2000)."

**6.** Here the Court cited "See, e.g., *Pine Island*, 649 N.W.2d at 452; *Paradigm*, 24 P.3d at 602; *Restatement (Third) of the Law Governing Lawyers* § 51 cmt. g (2000)."

**7.** The Court cited "See *Atlanta Int'l Ins. Co. v. Bell*, 438 Mich. 512, 475 N.W.2d 294, 297

(1991); *Safeway Managing Gen. Agency, Inc. v. Clark & Gamble*, 985 S.W.2d 166, 168 (Tex. App.1998) ('no attorney-client relationship exists between an insurance carrier and the attorney it hires to defend one of the carrier's insureds')."

**8.** The Court cited "See *Bell*, 475 N.W.2d at 297; *Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 484 (Tex.1992) (permitting subrogation action against law firm by excess insurer)."

the lawyer or law firm it retains to represent an insured.

357 F.Supp.2d at 957.

Additionally, the West Virginia Supreme Court of Appeals has recognized an important policy in allowing a cause of action to stand that is brought by a non-client beneficiary against an attorney whose negligence brings it loss. *Calvert, supra.* Simply stated, negligent attorneys should not be permitted to escape liability just because the more recognizable party with standing suffers no real loss; this would have the effect of insulating a negligent party from liability. Such a ruling would impair the policy of preventing such future harm.

Furthermore, other jurisdictions have found that insurers, although not clients, are owed a duty of care, which allows them to bring suit for legal malpractice [9]. *Paradigm Ins. Co. v. Langerman Law Offices, P.A.,* 200 Ariz. 146, 24 P.3d 593 (2001); *Home Indem. Co. v. Lane Powell Moss & Miller,* 43 F.3d 1322 (9th Cir.1995); *Unigard Ins. Group v. O'Flaherty & Belgum,* 38 Cal.App.4th 1229, 45 Cal.Rptr.2d 565 (1995); *Atlanta Int'l Ins. Co. v. Bell,* 438 Mich. 512, 475 N.W.2d 294 (1991). These cases illustrate with simplicity the application of the *Restatement* to a legal malpractice suit brought by a non-client insurance company against the attorney it hired to represent its insureds. Simply stated, regardless of its attorney-client status, "an insurer should be accorded standing to assert a claim for appropriate relief from the lawyer for financial loss proximately caused by [the attorney's] professional negligence ... because and to the extent that the insurer is directly concerned in the matter financially." *Paradigm, supra,* 24 P.3d at 599–600 (*quoting Restatement*

§ 14, cmt. f). Accordingly, State & County, having contracted with defendant Young, hereby possesses sufficient standing to bring suit for legal malpractice based upon the alleged breach of the duty of care. Whether State & County would be successful on the merits is not relevant to this inquiry.

The Court points out that, in the minority of jurisdictions that do not permit standing in these cases, standing is likewise not permitted in the attorney/will-beneficiary scenario. In *Conti v. Polizzotto,* 243 A.D.2d 672, 663 N.Y.S.2d 293 (1997), the New York Supreme Court of Appeals held that beneficiaries of a will failed to establish the requisite attorney-client relationship or privity and, therefore, lacked standing. The Court held that the will beneficiaries failed to show the existence of the necessary relationship to sustain the action for legal malpractice. *Id.*

Similarly, the Texas Supreme Court held that an attorney retained by a testator to draft a will owes no professional duty of care to persons named as beneficiaries under the will. *Barcelo v. Elliott,* 923 S.W.2d 575 (Tex.1996). The court reasoned that an attorney preparing a will owes a duty only to his or her client—the testator—not to third parties intended to benefit under the will. *Id.*

Upon conducting the above analysis, it becomes apparent to the Court that, if the West Virginia Supreme Court of Appeals adopted the minority position, precluding an insurance company from bringing this type of legal malpractice suit, but allowed a will beneficiary to bring a legal malpractice suit against a will drafter, it would be the only such jurisdiction of its kind.

---

9. Among the minority cases in which the courts do not permit insurers' standing, See *Lavanant v. Gen. Accident Ins. Co.,* 164 A.D.2d 73, 561 N.Y.S.2d 164, aff'd, 79 N.Y.2d 623, 584 N.Y.S.2d 744, 595 N.E.2d 819 (1992); *Safeway Managing Gen. Agency, Inc. v. Clark & Gamble,* 985 S.W.2d 166 (Tex.App.-San Antonio 1998).

### B. Neglect of a Reasonable Duty

Whether the defendant neglected a reasonable duty in the underlying case is an issue of fact which will not be discussed in this Order. Inasmuch as the pending motion is for judgment on the pleadings, the Court must assume that the well-pleaded facts are true and that the defendant did neglect a reasonable duty.

### C. Damages

In regards to damages in an action against an attorney for malpractice, the West Virginia Supreme Court of Appeals has held that "[d]amages arising from the negligence of an attorney are not presumed, and a plaintiff in a malpractice action has the burden of proving both his loss and its causal connection to the attorney's negligence." *Calvert,* 217 at 695, 619 S.E.2d at 208 (quoting *Keister v. Talbott,* 182 W.Va. 745, 391 S.E.2d 895 (1990)).

In *Calvert,* the plaintiffs contended that they should not have been required to prove that they would have lost the declaratory judgment action in order to prevail in their malpractice action. Instead, they suggested that merely establishing that they were sued in the declaratory judgment action should have been sufficient to establish proximate cause. The Court rejected this position, stating that "[w]ithout the requisite causal connection between an attorney's malpractice and a loss to the client, a malpractice case simply cannot go forward." *Calvert,* 217 at 695, 619 S.E.2d at 208 (*See e.g., Harrison v. Casto,* 165 W.Va. 787, 271 S.E.2d 774 (1980)).

In *Calvert,* the Court recognized that "[had] the declaratory judgment action . . . proceeded to a final judgment, the question of whether or not the [plaintiffs] . . . suffered any loss resulting from [the attorney's] negligence . . . would have been definitively answered." *Calvert,* 217 at 696, 619 S.E.2d 197. This, however, was not the case as the parties settled the declaratory action, and there had been no final judicial determination as to whether any negligence proximately caused injury to the will beneficiaries. Therefore, the Court held that those damages, which the plaintiffs voluntarily agreed to pay per the settlement agreement, simply bore no causal relationship to any negligence on the part of the attorneys who drafted the will. *Id.* The Court reasoned that "[h]ad the declaratory judgment action proceeded to its conclusion and resulted in a final judicial determination that [the testator's] exercise of her[/his] power of appointment had failed, then the causal connection between the attorney's negligence and any losses sustained by the [plaintiffs] would have been established. However, the [plaintiffs'] voluntary settlement of the declaratory judgment action precluded any such determination." *Calvert,* 217 at 696, 619 S.E.2d 197. Therefore, the Court held that, as a matter of law, no cause of action existed. Accordingly, the plaintiffs could not maintain their malpractice action.

This holding raises an issue which is not presented by the motion pending before the Court and which must be addressed at a later time in this action. The issue is whether and how the plaintiff can demonstrate the extent to which it was damaged by any breach of duty by defendant Young.

### IV. Conclusion

For the reasons stated above, plaintiff State and County Mutual Fire Insurance Company has standing to bring an action for negligence against defendant William Prentice Young. Therefore, the defendant's Motion for Judgment on the Pleadings (Doc. 58) is **DENIED.**

It is so **ORDERED.**