232 A.2d 378.

CARMINE NAPOLETANO *d.b.a.* NAPOLETANO'S PIZZERIA AND RESTAURANT *vs.* STANDARD FIRE INSURANCE COMPANY.

AUGUST 3, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is an action of assumpsit to recover on a policy of insurance for a loss allegedly resulting from hurricane damage. The case was tried before a justice of the superior court sitting with a jury and resulted in a verdict for the defendant. It is before us on the plaintiff's

exceptions[1] to several evidentiary rulings of the trial justice and to certain portions of the court's charge to the jury.

On August 31, 1954, Hurricane Carol struck Rhode Island and inflicted property damage estimated to be in excess of $200,000,000. Among those who suffered a loss as the result of this storm was plaintiff[2] who owned and operated a restaurant in Narragansett called "Napoletano's Pizzeria and Restaurant." On this date plaintiff had an insurance policy with defendant by the terms of which the "stock, furniture, fixtures, improvements and betterments" of his restaurant were insured under the extended coverage provision of a standard fire insurance policy,[3] against loss caused by the windstorm.

Narragansett is one of the state's shore communities whose beaches border the Atlantic ocean. The plaintiff's pizzeria was located about 250 feet from the beach area. Records from the United States weather bureau which were introduced into evidence gave a graphic description of the tumultuous fury of the wind and rain which enveloped the state on that ill-fated day. The plaintiff testified that dur-

---

[1] This case was tried long before the adoption of the new rules of civil procedure of the superior court.

[2] During the pending of this appeal, the death of Carmine Napoletano has been noted on the record and the administratrix of his estate was substituted as plaintiff in accordance with the provisions of G. L. 1956, §33-9-24.

[3] The pertinent provisions of the policy read as follows:

"Provisions Applicable Only to Windstorm and Hail: This Company shall not be liable for loss caused directly or indirectly by * * * tidal wave, high water or overflow, whether driven by wind or not.

"This Company shall not be liable for loss to the interior of the building or the property covered therein caused, (a) by water, rain, snow, sand or dust, whether driven by wind or not, unless the building covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct force of wind or hail and then shall be liable for loss to the interior of the building or the property covered therein as may be caused by water, rain, snow, sand or dust entering the building through openings in the roof or walls made by direct action of wind or hail * * *."

ing the storm several of his restaurant windows were blown away thereby allowing the torrential rains to enter the interior of his establishment. Subsequently, he said, the ocean inundated the restaurant to a depth of five feet. The plaintiff insisted, however, that the wind had caused $3,000 damage to his property before it was engulfed by the ocean flood.

The defendant denied any liability under the policy. An adjuster employed by defendant testified that he visited the pizzeria about a week after the storm. After an examination of the premises, he formed the opinion that any damage suffered to plaintiff's property occurred solely as a result of a tidal wave.

Because we are of the opinion that the trial justice erred in his instruction to the jury, we shall discuss only the exceptions plaintiff has taken in this regard.

In discussing the liability of defendant under the provisions of the policy, the trial justice told the jury that defendant was bound to reimburse plaintiff for damages caused by the wind but not for flood damage. After explaining what was meant by wind damage, the trial justice stated as follows:

"* * * But, you must bear in mind that if subsequent to that damage and immediately thereafter the article so specified should be flooded or inundated, or swamped by ocean water, then, of course, the defendant is not liable for such damaged property. * * * If, however, that item may have been damaged by that rain or spray driven by wind, and subsequently thereto it was under water, such as, for instance, a fixture such as a stove which may have been damaged by the rain to a certain extent, but then was subsequently inundated by water and damaged by the flood waters, he cannot recover for that stove. * * *"

The superior court then concluded its charge and the jury retired to commence its deliberations. Thereafter, it re-

turned to the courtroom for further instructions and the following colloquy occurred:

"THE COURT: Mr. Foreman and ladies and gentlemen of the jury, I have a written request signed by the foreman to the effect that, 'We, the jury, request to hear the court's remarks concerning damage to stock and fixtures prior to the flooding by wind and wind-driven rain, and subsequent flood damage, and all remarks pertaining thereto.'

"Now I don't know what transpired from the time that the court charged you, but it seems to me when you say, 'all remarks pertaining thereto' that you are covering quite a bit of what the court gave in his charge. Do I understand that all of that has been forgotten, or is there any particular point that you wish?

"FOREMAN: The only thing, sir, we are interested in are the remarks that pertained, or the court's remarks pertaining to the damage just prior to the flooding, and the remarks pertaining to the subsequent flooding.

"THE COURT: All right. I believe it would be better for the court to give you the law concerning that particular phase of it. As far as the law is concerned, where property of the insured is damaged by wind and rain, or by either one, or by both, together with wind-driven spray, which damages property inside the premises of the plaintiff through an opening that has been caused by the wind itself, that far the defendant would be responsible for such damage. Now, if this same property which was damaged by the wind and rain and wind-driven spray should subsequently be flooded, and by 'subsequently' I mean within a reasonable length of time therefrom, then the defendant is not responsible. Is that the part that you want?

"FOREMAN: That satisfies the question.

"THE COURT: Of course, if any of that material is not subsequently flooded, of course, then he can recover; but, if it is subsequently flooded he cannot recover. That is the way that law is as stated. * * *"

It was plaintiff's burden to show by a fair preponderance

of the evidence that the damages he sustained were within the coverage and not encompassed by the exclusions of liability set forth in the contract he had entered into with defendant. In pursuit of this objective, plaintiff had testified as to the action of the wind blowing out his windows and the resulting deluge which followed in his premises. He testified that he had, as a result of the wind's action, sustained a loss of $3,000. All of this allegedly occurred before the ocean reached the building. The plaintiff's testimony was corroborated in several respects by a delivery man, who, before the flood, delivered bread to the restaurant that day.

In this case we are not concerned with a loss which is the result of the concurrent action of two forces—one of which is compensable under the provisions of the policy and the other which is not. The plaintiff attributes his loss exclusively to the wind, while defendant is just as emphatic that the ocean on its rampage caused the damage. This being so, plaintiff was entitled to have the jury consider whether or not the loss he alleged was due to the wind blowing out the restaurant windows and the extent of the damage sustained thereby. The instructions given the jury, however, effectively precluded the jury from making any consideration of plaintiff's claim which, he says, arose prior to the rise of the ocean waters. The court's repeated references to any subsequent flooding of the damaged goods as absolving defendant from any liability under the policy are patently wrong and their use requires a new trial.

We believe that if the plaintiff is able to segregate the damages occasioned by the wind's action from the damages caused by the tidal wave, he may recover under his policy. See: *Loyola University* v. *Sun Underwriters Ins. Co.*, D.C.La., 93 F. Supp. 186, aff'd C.A. 196 F.2d 169; *Parmer* v. *Utah Home Fire Ins. Co.*, D.C. Tex., 219 F. Supp. 956. Under the charge, as given by the court, it was impossible for him to do so.

The plaintiff's exceptions to the charge are sustained, his other exceptions are not reached, and the case is remitted to the superior court for a new trial.

*Luigi Capasso,* for plaintiff.

*Jordan, Hanson & Curran, Kirk Hanson* and *Paul A. Lietar,* of Counsel, for defendant.