ALLSTATE INSURANCE CO.

v.

Robert P. RUSSO et al.

93–449–Appeal.

Supreme Court of Rhode Island.

May 25, 1994.

---

Peter J. Valeta, Chicago, IL, John H. Blish, Stephen J. Reid, Jr., Blish & Cavanagh, Providence, for plaintiff.

Harvey Weiner, James E. Carroll, Peabody & Arnold, Boston, MA, Shelia High King, Richard R. Beretta, Jr., Kirsten M. Lacovara, Peabody & Arnold, Providence, for defendant Robert P. Russo; Eva Marie Mancuso, Daniel V. Ballirano, Hamel, Waxler, Allen & Collins, Providence, for defendant, Armond G. Di Napoli.

Leonard Decof, John A. Macfayden, Providence, for amicus curiae.

## OPINION

LEDERBERG, Justice.

This declaratory-judgment action before the Supreme Court addresses two questions of law certified to us by the United States District Court for the District of Rhode Island (District Court) pursuant to Rule 6 of the Supreme Court Rules of Appellate Procedure. At issue is whether the Personal Umbrella Policies (PUPs) issued by Allstate Insurance Co. (Allstate) to the defendants, Robert P. Russo (Russo) and Armand G. DiNapoli (DiNapoli), provide coverage for the defendants' alleged misrepresentations concerning the financial viability of the Central Credit Union (CCU), a nonfederally insured credit union with its principal place of business formerly located in North Providence, Rhode Island. The questions certified to this court were as follows:

"1. Does the term 'misrepresentation,' as used in the Allstate Personal Umbrella Policies held by defendants, extend coverage for the claims of negligent and intentional misrepresentation made against defendants in the Master Complaint?

"2. If the answer to question number 1 is yes, does the defendants' service on Central Credit Union Board of Directors constitute a 'civic service' and not a 'business' activity as those terms are used in the Allstate Personal Umbrella Policies held by defendants?"

We conclude that the PUPs do not cover the claims of negligent misrepresentation and intentional misrepresentation made against Russo and DiNapoli in respect to the failure, closing, and receivership of CCU. Our negative response to the first question precludes our addressing the second question.

## BACKGROUND/FACTS

The parties stipulated the following facts.

Russo and DiNapoli were members of the board of directors of CCU, one of the financial institutions closed on January 1, 1991, and placed into receivership by the State of Rhode Island in the course of the state's banking crisis. DiNapoli also served as manager of CCU.

Subsequent to the closing of the credit union, former CCU depositors and shareholders filed a series of actions in the Rhode Island Superior Court naming as defendants, *inter alia*, Russo and DiNapoli in their capacities as directors and/or officers of CCU. To manage the litigation arising from the closing and receivership of CCU, the Superior Court entered a pretrial order requiring plaintiffs to file a consolidated complaint. In response, on April 17, 1991, the consolidated Central Credit Union Master Complaint (master complaint), filed in the Providence County Superior Court, named as defendants, *inter alia*, all officers and directors of CCU, including Russo and DiNapoli.

At the time the original complaints were filed in the Superior Court, Russo and DiNapoli each held a Homeowner's Insurance Policy and a Personal Umbrella Policy issued by Allstate. On or about February 19, 1991, Russo filed a claim with Allstate, requesting that Allstate defend and indemnify him in the Superior Court actions brought against him in his capacity as director of CCU. On or about February 22, 1991, DiNapoli also submitted a claim with Allstate. In response, Allstate, which had not been named a party to the Superior Court actions, filed an independent action in the District Court, seeking

a declaratory judgment that Allstate had no obligation to indemnify or to defend Russo or DiNapoli in the Superior Court actions. The District Court held that Allstate had no obligation to defend or indemnify either Russo or DiNapoli under their homeowner's policies. *Allstate Insurance Co. v. Russo,* 829 F.Supp. 24, 26 (D.R.I.1993). In respect to the scope of the coverage provided by the PUPs, the District Court certified to this court the two questions *supra. Id.* at 32.

## QUESTION ONE

In the 1991 master complaint, counts 9 and 10 charged Russo and DiNapoli with intentional and negligent misrepresentation of the solvency of CCU. Russo and DiNapoli argued that claims for misrepresentation were covered by the provisions of their PUPs.

■ This court has held that when a complaint discloses a statement of facts that could potentially bring the case within the coverage of a defendant's insurance policy, the insurer must defend the insured irrespective of whether the insured will ultimately prevail on the merits. *Flori v. Allstate Insurance Co.,* 120 R.I. 511, 513, 388 A.2d 25, 26 (1978). Furthermore, any doubts as to the adequacy of the pleadings to encompass an occurrence within the scope of the policy must be resolved in the insured's favor. *Employers' Fire Insurance Co. v. Beals,* 103 R.I. 623, 632, 240 A.2d 397, 403 (1968).

■ In determining whether the allegations of a complaint encompass an occurrence covered by an insurance policy, we interpret the policy by applying the rules for construction of written instruments. *See Colagiovanni v. Metropolitan Life Insurance Co.,* 57 R.I. 486, 488, 190 A. 459, 460 (1937); *Princess Ring Co. v. Home Insurance Co.,* 52 R.I. 481, 484, 161 A. 292, 293, *aff'd,* 163 A. 181 (1932). When the contested terms of an insurance policy are found to be "clear and unambiguous," we must apply them as written. *Malo v. Aetna Casualty and Surety Co.,* 459 A.2d 954, 956 (R.I.1983) (citing *Factory Mutual Insurance Co. v. Cooper,* 106 R.I. 632, 635, 262 A.2d 370, 372 (1970)). In determining whether the terms are ambiguous, the policy must be examined in its entirety, giving the words employed their plain, ordinary, and usual meaning. *Hughes v. American Universal Insurance Co.,* 423 A.2d 1171, 1173 (R.I.1981); *Nagy v. Lumbermens Mutual Casualty Co.,* 100 R.I. 734, 737, 219 A.2d 396, 398 (1966); *Princess Ring Co.,* 52 R.I. at 484, 161 A. at 293.

Guided by these principles, we are of the opinion that an examination of the PUPs discloses that the term at issue—"misrepresentation"—is clear and unambiguous. As written, this term does not cover the type of misrepresentation alleged in the master complaint.

## THE PUPs' COVERAGE

The PUPs at issue are each divided into four sections entitled "General," "Excess Liability Insurance," "Exclusions," and "Conditions." To determine the general scope of coverage provided by the PUPs, we examine the "Excess Liability Insurance" provision. This section provides in relevant part:

**"Coverage—When We Pay**

"**Allstate** will pay when an **insured** becomes legally obligated to pay for **personal injury** or **property damage** caused by an **occurrence.**

" * * *

**"Defense; Settlement; Supplementary Payments**

**Allstate** will defend an **insured** if sued as the result of an **occurrence** covered by this policy even if the suit is groundless, false or fraudulent."

When given their plain and ordinary meaning, the terms of the "Excess Liability Insurance" section clearly establish that the PUPs cover, *inter alia,* "occurrences" that cause "personal injury." The term personal injury, as defined in the "General" section, includes the term "misrepresentation:"

" **'Personal Injury'**—means:

\* \* \* \* \* \*

b) false arrest; false imprisonment; wrongful detention; wrongful entry; invasion of rights of occupancy; or malicious prosecution;

c) libel; slander; *misrepresentation;* humiliation; defamation of character; invasion of rights of privacy; and

d) discrimination and violation of civil rights." (Emphasis added.)

It is thus clear that the PUPs cover occurrences that involve misrepresentation.[1] We next address the meaning of that word.

### THE MEANING OF "MISREPRESENTATION"

 The meaning of "misrepresentation," as used in the PUPs, cannot be determined in isolation or out of context. *See Amica Mutual Insurance Co. v. Streicker,* 583 A.2d 550, 552 (R.I.1990). *Accord Hughes,* 423 A.2d at 1173; *McGowan v. Connecticut General Life Insurance Co.,* 110 R.I. 17, 19, 289 A.2d 428, 429 (1972). Rather, the contested terms of an insurance policy must be defined contextually. *See McGowan,* 110 R.I. at 20–21, 289 A.2d at 429–30; *Nagy,* 100 R.I. at 738–39, 219 A.2d at 399. This principle, known as *noscitur a sociis* (literally, from the Latin, "it is known by its associates"), provides that the meaning of a word in a written instrument must be determined by reference to the terms accompanying the word and, more specifically, " 'that general and specific words are associated with and take color from each other.' " *Industrial National Bank v. Sefsick,* 92 R.I. 93, 100, 166 A.2d 417, 421 (1961). *Noscitur a sociis* and its related, narrower Latin maxim—*ejusdem generis* ("of the same kind")—have been applied in this jurisdiction to interpret terms of contracts, statutes, and wills. *See Berthiaume v. School Committee of Woonsocket,* 121 R.I. 243, 248, 397 A.2d 889, 893 (1979); *Shulton, Inc. v. Apex, Inc.,* 103 R.I. 131, 135, 235 A.2d 88, 91 (1967); *Sefsick,* 92 R.I. at 100, 166 A.2d at 420–21; *Rhode Island Hospital Trust Co. v. Babbitt,* 22 R.I. 113, 115, 46 A. 403, 404 (1900); *Railton v. Taylor,* 20 R.I. 279, 283, 38 A. 980, 982 (1897).

Standing alone, "misrepresentation" is a very broad term, and—as the District Court noted in *Allstate Insurance Co. v. Russo*—

"has been merged to such an extent with other kinds of misconduct that neither the courts nor legal writers have found any basis to regard it as *a separate basis of liability.*" 829 F.Supp. at 28 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 105 at 726 (5th ed. 1984)). Instead, misrepresentation is regarded "as a method of accomplishing various types of tortious conduct." 9 Stuart M. Speiser et al., *The American Law of Torts* § 32:2 at 209 n. 2 (1992). The term is defined formally as "[a]ny manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts." Black's Law Dictionary 1001 (6th ed. 1990).

 As used in subpart C of the definition of "personal injury," however, the term "misrepresentation" is surrounded by the more specific terms "libel," "slander," "humiliation," "defamation of character," and "invasion of rights of privacy." The interpretation of misrepresentation, for purposes of the PUPs, can only be ascertained, then, from its contextual meaning.

We note that the other terms in subpart C have meanings more specific than that of "misrepresentation." "Defamation," for example, is "an attack on the reputation of another, that is to say, the unprivileged publication of false statements which * * * result in injury to another." 53 C.J.S. *Libel and Slander* § 2 at 25 (1987). "Libel" and "slander" are "methods of defamation" of one's reputation and character by the publication of false statements. *Id.* §§ 2, 5 at 25, 32.

Under the doctrine of *noscitur a sociis,* the meaning of the general term "misrepresentation" is qualified and restricted, *inter alia,* by its association with the terms "libel," "slander," and "defamation." The listing of these terms *together* within the definition of "personal injury" demonstrates the intent to insure against liability for injury arising from false statements injurious to a person's reputation. Use of the terms "humiliation" and

---

1. For purposes of resolving the first certified question, we assume that the allegations in the master complaint encompass an "occurrence" as defined in the PUPs, in which "occurrence" means, in relevant part, "an accident or a continuous exposure to conditions."

**1308** ▬

"invasion of rights of privacy" also manifests the intent to cover invasions of personal interests. Mental suffering that results from humiliation constitutes "a compensable element of damages" for personal injuries, *Arlan v. Cervini*, 478 A.2d 976, 979–80 (R.I. 1984), and may be the basis of recovery in an action for defamation. 50 Am.Jur.2d *Libel And Slander* § 356 at 878–79 (1970). An action for invasion of the right of privacy can ensure an individual's right to mental comfort and peace. *Id.* § 6 at 518.

Use of the term "misrepresentation" within this context clearly restricts the coverage in the PUPs to liability for personal injury that arises from false statements injurious to another's reputation or otherwise invasive of his or her personal interests. Accordingly, the term cannot be interpreted as extending the coverage of the PUPs to the master complaint's allegations that Russo and DiNapoli misrepresented the solvency of CCU.[2]

▬ For the foregoing reasons, this court holds that the term "misrepresentation" as used in the Personal Umbrella Policies held by Russo and DiNapoli does not extend coverage for the claims of negligent and intentional misrepresentation made against them in the master complaint. Because we answer the first certified question in the negative, we refrain from addressing the second question.

The papers in this case are remanded to the United States District Court for the District Court of Rhode Island.

---

2. In arguing that the terms of an insurance policy should invariably "be given a layman's definition, not the reading of a skilled grammarian," DiNapoli objected to restricting the scope of misrepresentation. We have held that when the contested terms of a policy are *ambiguous*, "[t]he test to be applied is not what the insurer intended by his words, but what the ordinary reader and purchaser would have understood them to mean." *Pressman v. Aetna Casualty and Surety Co.*, 574 A.2d 757, 760 (R.I.1990) (quoting *Elliott Leases Cars, Inc. v. Quigley*, 118 R.I. 321, 326, 373 A.2d 810, 812 (1977)). Because the PUPs are clear and unambiguous, however, this test is inapplicable in the instant case.