**FOXON PACKAGING CORP.**

v.

**AETNA CASUALTY AND SURETY CO.**

**Civ. A. No. 93–0392ML.**

United States District Court,
D. Rhode Island.

Nov. 21, 1995.

William Y. Chaika, Chaika & Chaika, Providence, RI, for Plaintiff.

Ronald P. Langlois, Stephen P. Nugent, Providence, RI, Diane Azarian, Michael C. Koffman, Thomas F. Maffei, Choate, Hall & Stewart, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

LISI, District Judge.

This is an action by Foxon Packaging Corporation ("Foxon") against Aetna Casualty and Surety Company ("Aetna") for (1) breach of contract, (2) "breach of covenant of good faith and fair dealing in violation" of certain fiduciary duties, and, (3) a violation of R.I.G.L.1956 (1985 Reenactment) § 9–1–33.[1] This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Aetna has moved for entry of summary judgment on the basis that its insurance policy with Foxon does not provide coverage for Foxon's claims. For the reasons set forth below, Aetna's motion for summary judgment is granted.

---

**1.** R.I.G.L. § 9–1–33 allows an insured to bring an action against an insurer when it is alleged that the insurer wrongfully and in bad faith refused to pay or settle a claim or otherwise wrongfully and in bad faith refused to timely perform its obligation according to an insurance contract.

## Facts

Both parties agree that the material facts are undisputed.[2] In November of 1987, former Foxon employee Hugo Hernandez ("Hernandez") filed a charge of racial discrimination ("charge") against Foxon with the Rhode Island Commission for Human Rights ("Commission") according to R.I.G.L. 1956 (1986 Reenactment) § 28–5–7. Hernandez alleged that in or about February 1987 Foxon employees had posted a sign containing the initials "KKK"[3] at his work station. When Hernandez informed his foreman of the sign, the foreman told him to ignore it because it was an "old joke." At no time did the foreman take any actions, punitive or otherwise, to address Hernandez's complaint. Rather, Hernandez saw the foreman view the sign, smile, and "pat" the employees who posted the sign. As a result of this incident Hernandez resigned his position after working at Foxon for approximately three weeks.

Based on Hernandez's charge, the Commission issued a complaint against Foxon. The complaint stated that there was probable cause to believe that Foxon had committed the allegations contained in the charge, thus violating § 28–5–7. After holding a hearing, the Commission found in favor of Hernandez and awarded him back wages, average salary increases, interest and employment benefits. On appeal, the Rhode Island Superior Court upheld the Commission's decision and issued an order of judgment against Foxon for $64,500 in back pay, plus $25,225 in attorney's fees.

Aetna insured Foxon under a "Broad Form Comprehensive General Liability" policy from September 1986 to September 1987. In 1989 and 1991, Foxon requested that Aetna defend and indemnify Foxon against Hernandez's intentional discrimination claim pursuant to the personal injury and bodily injury provisions in the policy. Aetna denied coverage on both occasions.

Foxon claims that Hernandez's injury arises out of his contract of employment and is consequently a "covered injury" because Foxon's policy covers any bodily injury resulting from any oral agreement relating to Foxon's business. It is Aetna's position that Foxon's insurance policy does not provide coverage for the complaint of intentional racial discrimination filed against Foxon.

## Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The facts must be reviewed in the light most favorable to the non-moving party, drawing all inferences in the non-moving party's favor. *LeBlanc v. Great American Insurance Co.*, 6 F.3d 836 (1st Cir.1993), *cert. denied* — U.S. —, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). The non-moving party "'may not rest upon mere allegations * * *, [he or she] must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## Discussion

### Duty to Defend and Indemnify

The crux of Foxon's claims involves whether Aetna breached its insurance contract with Foxon by refusing to defend and indemnify Foxon against Hernandez's intentional discrimination lawsuit. The action is before the court pursuant to this court's grant of diversity jurisdiction, consequently the court must look to the substantive law of the state of Rhode Island. *Marley v. United Parcel Service Inc.*, 665 F.Supp. 119 (D.R.I. 1987). In Rhode Island, an insurer's duty to defend a suit brought against one of its policyholders is determined by the allegations contained in the complaint. *Allstate Insurance Co. v. Russo*, 641 A.2d 1304, 1306–07 (R.I.1994); *Employers' Fire Insurance v.*

---

**2.** Aetna has asserted as a defense that is was prejudiced by Foxon's late notice. For purposes of the motion for summary judgment, Aetna is not raising the notice issue. Further, in view of the court's determination of the motion on the substantive legal issue, the question concerning whether proper notice was given is not relevant.

**3.** This was an obvious reference to the Ku Klux Klan.

*Beals,* 103 R.I. 623, 631, 240 A.2d 397, 402 (1968). This common law rule, known as the pleading test, provides that:

> "where the particular policy requires [an] insurer to defend even if the suit is groundless, false or fraudulent, the insurer's duty to defend is ascertained by laying the tort complaint alongside the policy; *if the allegations in the complaint fall within the risk insured against in the policy, the insurer is said to be duty-bound to provide a defense for the insured* regardless of the actual details of the injury or the ultimate grounds on which the insured's liability to the injured party may be predicated." *Beals,* 103 R.I. at 623, 240 A.2d at 402 (emphasis added).

A court must resolve any doubts concerning the adequacy of the pleadings to encompass an occurrence within the scope of the policy in favor of the insured. *Russo,* 641 A.2d at 1306. In determining whether allegations in a complaint encompass an occurrence within the scope of a policy Rhode Island courts apply the general rules of contract construction. *Id.* "[E]ffect must be given to the plain, ordinary meaning of the language employed." *Mullins v. Federal Dairy Co.,* 568 A.2d 759, 762 (R.I.1990). If terms of an insurance contract are found to be plain and unambiguous courts must apply the terms as written. *Malo v. Aetna Casualty and Surety Co.,* 459 A.2d 954 (R.I.1993). If the language in an insurance agreement is subject to more than one interpretation, the language should be strictly construed against the insurer. *Mullins,* 568 A.2d at 762. A court, however, must be cautious and should not "stretch its imagination in order to read ambiguity into a policy where none is present." *Id.* Additionally it is Foxon's burden to show that the damages it sustained were within the coverage of the policy and not encompassed by exclusions. *Napoletano v. Standard Fire Insurance Co.,* 102 R.I. 604, 232 A.2d 378 (1967). This court also notes that the duty to indemnify is much narrower in scope than the duty to defend. *See Beals,* 103 R.I. at 633, 240 A.2d at 403. Unlike the duty to defend, the duty to indemnify depends on whether the injured party will ultimately prevail against the insured. *Id.*

### *The Fair Employment Practices Act*

The state of Rhode Island has recognized that "[t]he right of all individuals in this state to equal employment opportunities, regardless of race or color, religion, sex, handicap, age or country of ancestral origin, is * * * a civil right." R.I.G.L.1956 (1986 Reenactment) § 28–5–5. The Rhode Island Fair Employment Practices Act, R.I.G.L.1956 (1986 Reenactment) §§ 28–5–1 to 28–5–40, provides that it is an unlawful employment practice for any employer

> "[t]o refuse to hire any applicant for employment because of his or her race or color, religion, sex, handicap, age, or country of ancestral origin, or

> * * * [b]ecause of such reasons, to discharge an employee or discriminate against him or her with respect to hire, tenure, compensation, terms, conditions or privileges of employment, or any other matter directly or indirectly related to employment[.]" R.I.G.L. § 28–5–7(A), (B).

This section "applies to any act of discrimination against 'any applicant' or 'an employee.'" *Newport Shipyard, Inc. v. Rhode Island Commission for Human Rights,* 484 A.2d 893, 897 (R.I.1984). The Fair Employment Practices Act "unmistakably forbids individual acts of discrimination as well as patterns of discriminatory practice." *Id.* The Commission is an agency created to address unlawful employment practices claims brought pursuant to § 28–5–7. R.I.G.L. § 28–5–8. Section 28–5–13 delineates the powers and the duties of the Commission which includes the power "[t]o receive, investigate, and pass upon charges of unlawful employment practices." R.I.G.L. § 28–5–13(6). Additionally the Commission has the power "[t]o adopt, promulgate, amend, and rescind rules and regulations to effectuate the provisions of this chapter, and the policies and practice of the commission in connection therewith." R.I.G.L. § 28–5–13(4). The Commission also has the authority to issue and serve complaints. R.I.G.L. § 28–5–18. Section 28–5–24 grants the Commis-

sion the authority to award injunctive relief, back pay and compensatory damages.[4]

### The Complaint

The complaint contains the following allegations made by Hernandez:

"1. I was subjected to discriminatory terms and conditions of employment by Foxon Packing Corporation. I worked at the company as a label printer for 2 to 3 weeks until I was forced to leave my job on or around February 2, 1987.

2. On the aforementioned date, my co-workers made a sign containing a Ku Klux Klan notation and placed this sign in front of my work area. I continued to work for about an hour in the presence of the sign and then went to discuss the matter with Al, my foreman. He told me not to pay attention to the sign because it was 'an old joke.' Because of the company's refusal to effectively resolve the matter, I left my job.

3. I believe I have been discriminated against because of my color and ancestral origin in that:

a. I am a dark-skinned Hispanic (Puerto Rican);

b. I was the only Hispanic working at the company. The only other minority employed was an Asian woman;

c. I was a satisfactory worker;

d. My white co-workers displayed a racially derogatory sign in my work area;

e. The supervisor, instead of taking punitive action against these employees, cooperated in the discriminatory action;

f. Due to this racially tainted work environment, I left my job, which has caused me to suffer monetary loss."

The heart of the complaint is Hernandez's claim of intentional racial discrimination in the workplace. The complaint clearly states that Hernandez left his position at Foxon due to a discriminatory work environment. Hernandez alleges no other injuries except financial losses resulting from his loss of employment.

### The Policy

■ Foxon argues that the discriminatory words and actions caused Hernandez's personal injury. Consequently, Foxon contends that Hernandez's injury falls within the personal injury and advertising injury liability coverage in the Broad Form Comprehensive General Liability Endorsement. Section II(D) defines the term "personal injury" as the following:

" 'Personal Injury' means injury arising out of one or more of the following offenses committed during the policy period:

(1) false arrest, detention, imprisonment, or malicious prosecution;

(2) wrongful entry or eviction or other invasion of the right of private occupancy;

(3) a publication or utterance

(a) of a libel or slander or other defamatory or ·disparaging material, or

(b) in violation of an individual's right of privacy;

except publications or utterances in the course of or related to advertising, broadcasting, publishing or telecasting activities conducted by or on behalf of the named insured shall not be deemed personal injury." Exhibit 1 at 8.

In addition to its "personal injury" argument Foxon also claims that Aetna has a duty to defend and indemnify based upon the portions of the policy referring to "bodily injury." Section I of the comprehensive general liability policy provides, in part, that Aetna "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodi-

---

4. Section 28–5–24 was amended on June 16, 1991 to permit an award of compensatory damages. P.L.1991, ch. 135, § 2. Prior to the 1991 amendment, the Commission's authority was limited to awards of back pay and injunctive relief. Section 3 of P.L.1991, ch. 135 provides that the amendment shall take effect upon passage and apply to any and all pending proceedings. The court notes that Foxon filed its appeal to the Superior Court on July 31, 1989. The Superior Court rendered its decision on August 29, 1991. The complaint was never amended to include a prayer for compensatory damages. Thus, the only damages sought and awarded were for back pay and attorney's fees.

ly injury or property damages to which this insurance applies, caused by an occurrence * * *." Exhibit 6 at 1. Exclusions to section I include:

"(a) * * * liability assumed by the insured under any contract or agreement except an incidental contract * * *;

*  *  *  *  *  *

(j) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the insured under an incidental contract." Exhibit 6 at 1.

The policy defines "bodily injury" as any "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom * * *." Exhibit 1 at 3. "Incidental Contract" is defined as

"any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) elevator maintenance agreement." Exhibit 1 at 3.

Section I(A) of the Broad Form Comprehensive General Liability Endorsement further provides that "the definition of incidental contract is extended to include any oral or written contract or agreement relating to the conduct of the named insured's business." Exhibit 1 at 9. Foxon asserts that these provisions in the policy permit coverage for bodily injuries sustained by Hernandez while working at Foxon.

Foxon's argument would require this court to jam a square peg into a round hole. After comparing Hernandez's complaint with the insurance policy, it becomes evident that there is not even the potential for coverage because the complaint does not allege any personal or bodily injury whatsoever. The complaint focuses entirely on the monetary losses resulting from intentional racial discrimination in the workplace. Indeed, the Commission's authority was limited by statute to award only economic damages arising from the loss of employment. The provisions which Foxon relies upon, however, speak only to coverage for personal or bodily injury as those terms are defined in the policy. According to Rhode Island law, Aetna does not have a duty to defend or indemnify when none of the allegations contained in Hernandez's complaint fall, even superficially, within any of the provisions in the insurance policy providing coverage.

Close examination of the plain language in the relevant provisions further dilutes Foxon's claim that Aetna's insurance policy provides coverage for acts of intentional discrimination in the workplace. In determining whether the allegations of a complaint encompass an occurrence covered by an insurance policy, Rhode Island courts must interpret an insurance policy by applying the rules for construction of written instruments. *Russo*, 641 A.2d at 1306. When the contested terms of an insurance policy are found to be "clear and unambiguous," the court must apply them as written. *Id.* In determining whether the terms are ambiguous, the policy must be examined in its entirety, giving the words employed their plain, ordinary, and usual meaning. *Id.*

■ The personal injury provision in the policy permits coverage for "disparaging material." Foxon claims that the posting of the Ku Klux Klan sign "disparaged" Hernandez because it demeaned his value as a worker. Disparagement, however, is a legal cause of action similar to defamation and injurious falsehood. *See Restatement (Second) of Torts*, §§ 623A, 624 (1977). In Rhode Island, disparagement of property is synonymous with slander of title. *DeLeo v. Anthony A. Nunes Inc.*, 546 A.2d 1344 (R.I.1988); *cert. denied*, 489 U.S. 1074, 109 S.Ct. 1522, 103 L.Ed.2d 828 (1989); *Restatement (Second) of Torts* § 624. Courts in other jurisdictions have directly addressed the issue of whether an intentional discrimination claim constitutes disparagement. *Lindsey v. Admiral Ins. Co.*, 804 F.Supp. 47 (N.D.Cal.1992); *American and Foreign Ins. Co. v. Church Schools in the Diocese of Va.*, 645 F.Supp.

628 (E.D.Va.1986). In *Lindsey,* the court held that the underlying sexual discrimination complaint could not constitute a personal injury claim under the insurance policy because disparagement is a distinctly different cause of action from sexual discrimination. *Lindsay,* 804 F.Supp. at 52. Similarly, the underlying complaint against the insured in *American* involved assault and battery, intentional and negligent infliction of emotional distress and negligent improper sexual conduct. *American,* 645 F.Supp. at 630. The *American* court held that the personal injury coverage applies only to claims for personal injuries arising out of the enumerated torts. *American,* 645 F.Supp. at 633–34. The coverage does not extend to claims which merely make reference to allegedly libelous or disparaging statements as factual background. *Id.*

When read as a whole, the policy protects against injury to Foxon's business reputation resulting from disparagement in the legal sense. This court concludes that Foxon is not entitled to coverage under the personal injury provisions in the policy because the underlying injury resulted from intentional discrimination, as opposed to the tort of disparagement.

█ Additionally, a close examination of section I(A) of the general liability endorsement involving bodily injury coverage reveals that these provisions do not provide coverage for acts of intentional discrimination. Foxon argues that the employment contract between Hernandez and Foxon also constitutes an incidental contract under section I(A), and thus falls within an exception to the exclusion of coverage for certain bodily injuries. It appears that Foxon is arguing that Hernandez's charge of discrimination arises out of Foxon's contract of employment and thus comes within the insured's coverage for incidental contracts. Although the Rhode Island Supreme Court has not reviewed a provision similar to section I(A), courts in other jurisdictions have reviewed almost identical provisions. *See Lapeka Inc. v. Security Nat. Ins. Co. Inc.,* 814 F.Supp. 1540 (D.Kan.1993); *Smithway Motor Xpress Inc. v. Liberty Mutual Ins. Co.,* 484 N.W.2d 192 (Iowa 1992); *Commercial Union Ins. Co. v. Basic American Medical,* 703 F.Supp. 629 (E.D.Mich. 1989).

█ In order to fall within the incidental contract provision the contract must be incidental *and* that contract must be one in which the insured assumes liability. *Lapeka,* 814 F.Supp. at 1550. *Lapeka* analyzed the same incidental contract language contained in the Aetna policy.

"The phrase 'liability assumed by the insured under any contract or agreement' [*see* exhibit 6 at 1] does not refer to the type of liability incurred as a result of the breach of *every* contract. This phrase refers to a narrower class of contract liability[.] * * * Liability insurance policies not infrequently contain provisions specifically excluding from coverage liability assumed by the insured under a contract not defined in the policy. *Such provisions,* which may be referred to as 'contractual exclusion clauses,' *deny the coverage generally assumed by a liability policy in cases in which the insured in a contract with a third party agrees to save harmless or indemnify such third party.* * * * The purpose of these contractual exclusion clauses is not to make the insurer underwrite its insured's contracts, but to limit coverage to the insured's tort liability." *Id.* (emphasis added).

The *Lapeka* court concluded that incidental contracts do not encompass employment contracts. *Id.; see also Smithway,* 484 N.W.2d at 196. In this instance Foxon did not enter into any agreement to assume the liability of another party. This court concludes that Hernandez's employment contract with Foxon did not constitute an incidental contract and that Aetna properly denied coverage to Foxon under the bodily injury provisions in the policy.

Aetna argues, and this court agrees, that the public policy of the State of Rhode Island as articulated in the Fair Labor Practices Act, militates against judicial creation of a safe harbor within which Foxon may presumably violate the law at will with impunity. Such a result would do violence to the public policy of the state and eviscerate the statute's intended guarantee of a workplace free

of discrimination. R.I.G.L. § 28-5-3 provides:

"It is hereby declared to be the public policy of this state to foster the employment of all individuals in this state in accordance with their fullest capacities, regardless of their race or color, religion, sex, handicap, age, or country of ancestral origin, and to safeguard their right to obtain and hold employment without such discrimination."

The Rhode Island Supreme Court has consistently held that insurance policies cannot insure for actions which are contrary to public policy. *See Allen v. Simmons,* 533 A.2d 541, 543-44 (R.I.1987). A contract or agreement is contrary to public policy when it "is injurious to the interests of the public, interferes with the public welfare or safety, is unconscionable, or tends to injustice or oppression." *City of Warwick v. Boeng Corp.,* 472 A.2d 1214, 1218 (R.I.1984). Furthermore, when a state's legislature has enacted legislation that forbids certain conduct, that conduct is against public policy. *Lucas v. Brown & Root Inc.,* 736 F.2d 1202, 1205 (8th Cir.1984).

█ Foxon comes before this court to seek, in essence, insulation from its own wrongdoing. When notified of the Ku Klux Klan sign, Foxon's superiors not only failed to take disciplinary action against the employees, but actively encouraged the continuation of a racially hostile work environment. It would be a clear violation of public policy if businesses and individuals could insure themselves against liability for committing intentional acts of discrimination. This result would promote, rather than deter discriminatory behavior. "If an insurance policy were to cover [Foxon's] wilful racial discrimination * * * [Foxon] could indulge [its] own preference for racial discrimination at little risk to" itself. *Western Casualty and Surety Co. v. Western World Insurance Co.,* 769 F.2d 381, 385 (7th Cir.1985). Foxon's knowing failure to address the blatantly discriminatory acts of its employees should not be condoned by shifting the burden of satisfying Hernandez's damage awards to Aetna.

For the foregoing reasons, Aetna's motion for summary judgment is granted.