DECISION
Before the Court are Rule 56 cross motions for summary judgment brought by the plaintiff, Town of Cumberland (Town), and the defendants, Rhode Island Interlocal Risk Management Trust, Inc. (Trust), Coregis Indemnity Company (Coregis), and Underwriters at Lloyds, London, CNA Reinsurance of London, Ltd. and Maryland Casualty Company (Underwriters) (collectively referred to as defendants). Jurisdiction is pursuant to G.L. § 9-30-1.
 Facts/Travel
This matter is an insurance coverage dispute arising out of a 1.6 million dollar settlement the Town paid to two parties, L.A. Ray Realty and the successors in interest to Savage Bros., Inc.[1] (underlying claimants). The settlement was the result of an underlying lawsuit in which the Town was found liable to the underlying claimants for interfering with their ability to develop certain parcels of land within the Town. The Town and the defendants are both seeking summary judgment on the Town's petition for declaratory judgment and breach of contract. The Town's petition seeks a declaration that the defendants must indemnify the Town for damages the Town paid as the result of the underlying lawsuit. The petition further alleges that the defendants breached their contract with the Town in refusing to indemnify it for the damages.
 The Underlying Claim[2]
On September 28, 1987, the Town Planning Board (planning board) adopted new subdivision regulations. The new regulations included a savings clause (grandfather clause) that exempted applications submitted for subdivisions as of September 28, 1987 from the new requirements. On October 7, 1987, the Town Council (town council) amended the Town's zoning ordinance to incorporate the new regulations, including the grandfather clause. The underlying claimants both had submitted subdivision applications to the planning board prior to September 29, 1987.
On April 20, 1988, Marlene Smith, a member of the town council, proposed amending the Town's zoning ordinance to require a two acre minimum for residential lots in Agricultural A and B districts, saving lots already of record. The town council did not pass the proposed amendment. On May 15, 1988, while the proposed amendment was pending, one of the underlying claimants, L.A. Ray Realty, submitted a new subdivision application to the planning board to subdivide one lot.
On July 7, 1988, the councilwoman again proposed amending the zoning ordinance to create two acre minimum lots in the Agricultural A and B district. This proposal included a grandfather clause for subdivisions filed with the planning board as of September 28, 1987. Although the Town's Mayor, Francis Stetkiewicz (Stetkiewicz), testified in favor of the amendment, the town council again rejected it.
After the town council's second rejection of the proposal, the town solicitor, Thomas Almeida (Almeida), drafted a petition requesting the following referendum be placed on the ballot of the November 8, 1988 election:
"All land zoned Agricultural A or B in the Town of Cumberland shall require a minimum lot size of 2 acres except for pre- recorded lots. This Act shall take effect immediately upon regular validation of the vote if a majority of electors voting on this referendum item in the Town of Cumberland shall approve."
On September 8, 1988, Almeida wrote to the Secretary of State, requesting that the question of whether to amend the zoning ordinance to set two acre minimum lots in Agricultural A and B districts be placed on the ballot. Included with the letter was a copy of the pertinent article of the zoning ordinance as it would read if the referendum passed. It included a grandfather clause for all lots of record and for all subdivisions filed with the planning board as of September 28, 1987. In a town wide election on November 8, 1988, the referendum passed.
On November 21, 1988, the planning board rejected all pending subdivision applications that did not meet the new requirements. Included in these were some of the underlying claimants' applications. The underlying claimants then brought a mandamus action in the Superior Court to compel the planning board to hear their applications. The trial justice ordered the planning board to conduct detrimental-reliance hearings. Meanwhile, on January 18, 1989, the town council amended the zoning ordinance to incorporate the new two acre lot minimums, effective November 16, 1988, the date the referendum election results were certified.
On January 16, 1989, the underlying claimants filed a complaint in Superior Court, challenging the validity of the amendment. The Supreme Court eventually invalidated the amendment, holding that using the referendum process to amend a zoning ordinance violates chapters 23 and 24 of title 45 of the Rhode Island General Laws. L.A. Ray Realty v. Town Council of Cumberland,603 A.2d 311 (R.I. 1992) (L.A. Ray Realty I).
When the planning board conducted the detrimental-reliance hearings, the underlying claimants' applications were again denied. The Town of Cumberland Zoning Board of Review upheld the planning board's denial. The two boards based their decisions on the amended ordinance, which did not include the grandfather clause. The underlying claimants appealed to the Superior Court, but that appeal was rendered moot by the Supreme Court's decision in L.A. Ray Realty I.
The underlying claimants then filed a complaint in Superior Court alleging the Town intentionally interfered with their prospective economic advantage, and that the Town violated their substantive and procedural due process rights. On March 8, 1994, the trial justice found that the underlying claimants' due process rights were not deprived, but that the Town had intentionally interfered with their prospective economic advantage and was, therefore, liable to the underlying claimants for damages. On June 26, 1995, the trial justice found that the underlying claimants were damaged in the amount of $1,094,742.81,[3] but because the Town was a governmental agency, each of the underlying claimants' damages was limited to $100,000.00, without interest or costs.
The Town and the underlying claimants appealed the Superior Court decision. On appeal, the Town argued that the trial justice erred in calculating damages. The underlying claimants argued that the trial justice's limitation of damages to $100,000.00 each was improper, and that the trial justice erred in finding that the Town had not violated their due process rights.
In L.A. Ray Realty, et al. v. Town of Cumberland, et al.,698 A.2d 202 (1997) (L.A. Ray Realty II), our Supreme Court affirmed the trial justice's finding of interference with contractual relations, but held that the trial justice erred in failing to consider reducing the awarded damages by the proceeds the underlying claimants would receive from selling the property. The court also upheld the trial justice's finding that the Town's interference with the underlying claimants' legitimate expectations amounted to egregious conduct, thus depriving the Town of governmental immunity, but that damages could not exceed $100,000.00. The court further found that the underlying claimants were denied their substantive and procedural due process rights, and that the underlying claimants were entitled to recover the full amount of their damages under 42 U.S.C. § 1983. Subsequent to the Supreme Court decision, the Town settled with the underlying claimants for $1,642,000.00.
 Claim Before This Court
The Town is a Member-Owner of the Trust, a risk sharing pool of government entities. At all times pertinent to this litigation the Town was covered by a self-insurance retention of $250,000.00 that the Trust managed. Furthermore, the Town carried, through the Trust, primary general liability insurance and errors and omission insurance issued by the Underwriters. Also through the Trust, the Town carried an excess general liability insurance policy issued by Coregis, as successor in liability to International Surplus Lines Insurance Company. The Town also carried errors and omissions insurance issued by National Union Fire Insurance Company (National Union).
After the Supreme Court decision, the Town sought indemnification from the defendants. The defendants refused, arguing that the Town's actions were not covered by the respective policies. The denial of coverage by the defendants led to the instant lawsuit.
The Town argues that the defendants must indemnify it because the insurance policies cover civil rights violations, which is how the Supreme Court classified the Town's conduct. Thus, the Town argues that it is entitled to summary judgment on its breach of contract and declaratory judgment claims.
The defendants argue that the Town was intentionally dishonest and fraudulent in its actions, and that its actions were illegal. Such conduct, the defendants argue, is precluded by the insurance policies in question and by Rhode Island public policy. Furthermore, the defendants argue the Town's actions effected a constructive taking of the underlying claimants' property, coverage of which is excluded by the insurance policies.
 Summary Judgment Standard
Summary judgment is a "drastic remedy to be granted sparingly only when a review of all pleadings, affidavits, and discovery materials properly before the court demonstrates that no issue of fact material to the determination of the lawsuit is in genuine dispute." Superior Boiler Works, Inc. v. R.J. Sanders, Inc.,711 A.2d 628, 631 (R.I. 1998). If no genuine issue of material fact exists, the court must then determine whether the moving party is entitled to judgment as a matter of law. Alfano v. Landers,585 A.2d 651, 652 (R.I. 1991).
A party opposing a motion for summary judgment has an affirmative duty to set forth specific facts that show that there is a genuine issue of material fact to be resolved at trial. Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1225 (R.I. 1996). "A party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material fact and cannot rest on the allegations or denials in the pleadings or the conclusions or on legal opinions." Macera Brothers of Cranston, Inc. v. Gelfuso 
Lachut, Inc., 740 A.2d 1262, 1264 (R.I. 1999) (citing Manning Auto Parts, Inc. v. Souza, 591 A.2d 34, 35 (R.I. 1991)). If the opposing party cannot establish the existence of a genuine issue of material fact, summary judgment must be granted. Grande v. Almac's, Inc., 623 A.2d 971, 972 (R.I. 1993).
 Town's Conduct as an "Occurrence"
The Town argues that the defendants' general liability insurance provided coverage for civil rights violations committed by the Town. The Town argues that in Section II, Agreement C of the Trust's Underwriters policy, the Underwriters and the Trust agreed to indemnify the Town for damages paid by it on account of personal injuries caused by the Town during the period of insurance. The Town notes that "a violation of civil rights" is included in the definition of "personal injuries" in Section II.
The defendants argue, however, that the coverage for a violation of civil rights is subject to the express limitation that personal injuries (which includes violations of civil rights) must arise from an "occurrence." The term occurrence is defined in pertinent part as "an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, or damage to property during the policy period[.]" Thus, the defendants argue, they are obliged to indemnify the Town only when a violation of a party's civil rights is the unexpected, unintended result of an accident.
Section II — Casualty Insurance, Agreement C — General Liability, provides:
"Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the [Town] for all sums which the [Town] shall be obligated to pay by reason of the liability imposed upon the [Town] . . . for damages direct or consequential . . . on account of personal injuries . . . suffered . . . by any person or persons . . .; and /or damage to or destruction of property or the loss of use thereof arising out of any occurrence happening during the period of Insurance."
The agreement does not state that a personal injury must arise out of an occurrence. Rather, it states that damage to or destruction of property or the loss of use thereof must arise out of an occurrence. The term "personal injuries" appears before the semicolon in the paragraph, while "destruction of property" and "occurrence" appear after the semicolon. Occurrence pertains to "destruction of property," not "personal injuries."
Furthermore, the definition of "personal injuries" includes, inter alia, false arrest, false imprisonment, malicious prosecution, and assault and battery. Such torts can never arise out of an "occurrence," as defined in the insurance contract, because they all either require the element of intent or require an element of expectation as to the resulting injury. See e.g. Crescent City L.S.L S.H. Co. v. Butchers' Union S.H. 
L.S.L. Co., 120 U.S. 141, 30 L.Ed 614, 7 S.Ct. 472 (1887) (malice required to sustain a malicious prosecution action); Vahlsing v. Commercial Union Ins. Co., 928 F.2d 486 (1st Cir. 1991) (intent to confine is a necessary element of false imprisonment); Hennessey v. Pine, 694 A.2d 691 (R.I. 1997) (assault is a physical act of a threatening nature or an offer of corporal injury; battery requires either intent or a willful setting in motion of a force that ordinarily causes injury).
Therefore, aside from the fact that the term "occurrence" does not modify "personal injuries," the defendants cannot argue that they will indemnify for losses arising from personal injuries only when they arise out of an occurrence, because the definition of personal injuries includes torts that cannot possibly arise out of an occurrence. To interpret the contract as stating that the insurer will indemnify for losses due to accidental or unexpected intentional torts is illogical and constitutes sophistry. At best, the language of the clause is ambiguous, in which case it would have to be construed in favor of the Town. See Martinelli v. Travelers Ins. Companies, 687 A.2d 443 (R.I. 1996).
Due to the fact that the general liability insurance contract covers the Town for civil rights violations, which need not arise out of an occurrence, as defined in the contract, the general liability insurance contract applies.
 Errors and Omissions Clause
The defendants argue that Endorsement No. 1 of the policy issued by the Underwriters, known as the errors and omissions clause, precludes coverage for the Town's misconduct. The clause reads, in pertinent part, as follows:
 "IT IS AGREED that Section II Agreement C is amended to include the following:
 The Underwriters agree, subject to the terms and conditions hereof, to indemnify the Assured (as herein defined) against any claims or claims made against them individually or collectively during the period of this Insurance, by reason of a wrongful act, error or omission, whenever or wherever committed or alleged to have been committed while acting in their capacity as an official, trustee, director or council member. . . .
 "For the purposes of this Endorsement the unqualified word "Assured" shall . . . includ[e] all persons who were, now or shall be lawfully elected or lawfully appointed officials, trustees, directors or council members of the Assured in the regular service of the Assured during the existence of this Insurance. . . .
 "Underwriters shall not be liable to make payment for loss in connection with any claim made against the Assured if a judgment or final adjudication in any action brought against the Assured shall be based on a determination that acts of fraud or dishonesty were committed by the Assured."
The defendants contend that the Town's conduct was fraudulent and dishonest, and that such conduct is specifically excluded from coverage by the errors and omissions clause.
The judgment in L.A. Ray Realty II was based on a determination that Stetkiewicz and Almeida withheld from the planning and zoning boards the fact that a grandfather's clause existed in the illegal referendum of November 8, 1988. In L.A. Ray Realty II, our Supreme Court found that "town officials altered the improperly adopted referendum to delete all grandfather's rights provisions and distributed the falsified ordinance to the planning and zoning boards." Id. at 211. The court also found that Stetkiewicz and Almeida informed the Town's building and zoning inspector that no grandfathered rights existed under the November 8, 1988 referendum. Id. Furthermore, the court found that at either Stetkiewicz's or Almeida's instruction, the building and zoning inspector handed out the revised zoning ordinance to members of the boards, without the grandfather clause. And, when directly asked by the chairman of the planning board whether a grandfather clause was included in the referendum, Almeida and Stetkiewicz informed him that none existed. Id. at 212. Such withholding of that essential information amounts to acts of fraud and dishonesty on the part of Stetkiewicz and Almeida, who, by definition, represent the Town.
In Pari v. Pari, 558 A.2d 632, 637 (R.I. 1989), our Supreme Court defined fraud (or deceit) as a knowing misrepresentation. Also in Allstate Ins. Co. v. Russo, 641 A.2d 1304 (R.I. 1994), the court held that misrepresentation is "[a]ny manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts." Id. at 1307 (citing Black's Law Dictionary 1001 (6th Ed. 1990)). Presenting the building and zoning inspector a version of the referendum without the grandfather's clause, and informing the chairman of the planning board that no such clause exists, amounts to assertions not in accordance with the facts.
According to the last full paragraph of Endorsement No. 1, if the judgments in the action brought against the Town were based on a determination that acts of fraud or dishonesty were committed by the Town (which by definition includes Town officials acting in their capacities), the defendants would not be liable under the Errors and Omissions Clause. As the record in L.A. Ray Realty II makes clear, these misrepresentations were made by town officials who had full knowledge of the falsity of their representations. Thus, the misrepresentations concerning the grandfather's clause were fraudulent. Accordingly, the defendants are not liable under the errors and omissions clause to indemnify the Town. However, the fact that the defendants are not liable under the errors and omissions clause does not preclude their liability under the general liability policy.
 Rhode Island Public Policy
The defendants further argue that Rhode Island public policy precludes insurance coverage for intentionally illegal, dishonest and fraudulent conduct. However, their reliance on Morin v. Aetna Casualty and Surety Co., 478 A.2d 964 (R.I. 1984), and Foxon Packaging Corp. v. Aetna Casualty and Surety Co.,905 F. Supp. 1139 (D.R.I. 1995), in support of their argument is misplaced.
In Morin, 478 A.2d at 966-67 (R.I. 1984), our Supreme Court held that to allow an insured to recover for damage caused by a fire the insured set "would violate all standards of public policy and defy the administration of justice." In Foxon, 905 F. Supp. at 1146, a decision based on an action for indemnification arising out of a company's intentional discrimination towards one of its employees, the court held that "it would be a clear violation of public policy if businesses and individuals could insure themselves against liability for committing intentional acts of discrimination."
The court in Morin held that it is contrary to public policy to allow an insured to collect proceeds for damages intentionally caused for the purpose of such recovery. 478 A.2d at 966-67.
The court in Morin addressed an insured's attempt to defraud its insurer, rather than general illegal, dishonest and fraudulent conduct. Here, the Town's actions, although fraudulent, were not conducted with an eye towards illegal insurance recovery.
Foxon Packaging involved an insured's attempt to be indemnified for its intentional discrimination. The court held that it would violate public policy to allow a company to insure against its own intentional discrimination towards its employees. The civil rights violation in Foxon Packaging was an employer's discrimination against one of its employees based on the employee's skin color and ancestral origin, not as in the case at bar, where the violation was a deprivation of due process. Neither of the two holdings stand for the proposition that Rhode Island law prohibits insurance coverage for intentionally illegal, dishonest and fraudulent conduct.
Accordingly, Rhode Island public policy does not prevent the defendants from indemnifying the Town for its misconduct.
 Inverse Condemnation
Endorsement No. 25 of the policy issued by the Underwriters, titled "Inverse Condemnation Exclusion Clause," states:
"This policy does not cover claims for loss or damage or any liability of any and all the Assureds arising out of or in any way connected with the operation of the principles of eminent domain, condemnation by whatever name called regardless of whether such claims are made directly against the Assured or by virtue of any agreement entered into by or on behalf of the Assured."
The defendants argue that in L.A. Ray Realty, 698 A.2d 202, our Supreme Court held that the Town's conduct amounted to a deprivation of the underlying claimants' property rights without just compensation, thus falling within the preclusion of this clause. The defendants point out the court's determination that the underlying claimants "were deprived of their fundamental, constitutionally protected property rights," Id. at 211, as evidence that the court determined inverse condemnation had occurred. The defendants also argue that the court's finding of intentional interference with the underlying claimants' property expectations is the equivalent of a determination that a inverse condemnation has occurred. Furthermore, in arguing that the court found the Town's actions to constitute a inverse condemnation, the defendants cite Justice Flanders' dissenting opinion, in which he wrote:
"We have long had a provision in our State Constitution prohibiting takings for public use without just compensation. See R.I. Const., art. 1, sec. 16 . . . . In Annicelli v. Town of South Kingstown . . . this court recognized that an inverse condemnation action would lie under the takings clauses of both the State and Federal Constitutions for governmental regulations that deprive property owners of all beneficial use of their land without just compensation."
"These state constitutional provisions provide property owners like [the underlying claimants] with adequate post-deprivation damages remedies for any alleged due process and takings violations." Id. at 218-219.
In the case cited by Justice Flanders, Annicelli v. Town of South Kingstown, 463 A.2d 133 (R.I. 1983), our Supreme Court held that when a restriction, such as a zoning ordinance, is so great as to take a person's property without "formally exercising the power of eminent domain," the restriction amounts to a constructive taking. More recently, in Alegria v. Keeney,687 A.2d 1249, 1253 (R.I. 1997), our Supreme Court adopted an analysis created by the United States Supreme Court in Penn Central Transportation Co. v. New York City, 438, U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), to determine whether a constructive taking has occurred. The Court's analysis set forth three factors that play a significant role in determining whether such a taking has occurred: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. Id. at 124, 98 S.Ct. at 2659, 57 L.Ed.2d at 648.
In L.A. Ray Realty, although the majority did determine that the underlying claimants were deprived of their constitutionally protected property rights, it did not determine that they were deprived of all beneficial use of their property by the Town's illegal actions. Such a determination must be made in order to find that an inverse condemnation has occurred. See Annicelli, 463 A.2d at 139. In fact, the majority never attempted to analyze the Town's actions and the impact of those actions using the Penn Central three part test. The holding in L.A. Ray Realty is based on the due process clause ([no person shall] be deprived of life, liberty, or property, without due process of law), not the takings clause, of the Fifth Amendment (nor shall private property be taken for public use, without just compensation.). See U.S. Const. amend. V.
While Justice Flanders, in his dissenting opinion, indicates that the Town's actions constituted a taking, L.A. Ray Realty, 698 A.2d at 218, the majority's holding clearly indicates that the actions amounted to a deprivation of the underlying claimants' property rights without due process, not an inverse condemnation. As such, this Court does not find that Endorsement No. 25, the "Inverse Condemnation Clause," precludes coverage in this matter.
 Conclusion
This Court grants the Town's motion for summary judgment and denies the defendants' motions for summary judgment on the Town's petition for a judgment declaring the defendants are obligated to indemnify the Town, pursuant to the Town's general liability coverage, for losses incurred in the settlement with the underlying claimants. This Court also grants the Town's motion for summary judgment and denies the defendants' motions for summary judgment on the Town's breach of contract claim.
Counsel shall submit an appropriate order and judgment for entry.
[1] Namely, Richard Savage and G. Robert Savage.
[2] The facts set forth in this decision concerning the underlying claim are adopted from the findings of fact issued in L.A. Ray Realty v. Town of Cumberland et al., C.A. 89-0449, November 30, 1994, Israel, J., and the Supreme Court's holding in L.A. Ray Realty v. Town of Cumberland et al., 698 A.2d 202
(1997).
[3] The trial justice found that L.A. Ray Realty was damaged in the amount of $778,114.81 and Richard and G. Robert Savage were damaged in the amount of $316,628.00.